Argued 17 April; decided 22 May, 1899

### STATE *v.* MCGRATH.

[57 Pac. 321.]

</div>

1. CRIMINAL LAW—COMPETENCY OF WIFE AS WITNESS.—Section 713 of Hill's Ann. Laws, providing that if a party offer himself as a witness it shall be deemed a consent to the examination of his wife, does not apply to criminal proceedings, the criminal code being complete within itself (section 1366) on that subject.

2. IDEM.—Sections 1365 and 1366 of Hill's Ann. Laws, making a defendant in a criminal proceeding a competent witness at his own request, and a husband or wife a competent witness against the other by the consent of both, mean an active consent, and not such as may be implied from the fact that the other spouse has testified.

3. CROSS EXAMINATION IS DISCRETIONARY.—The extent of the cross examination of witnesses rests largely in the discretion of the trial court, and error must affirmatively appear, or it will not be reviewed.

From Linn: GEO. H. BURNETT, Judge.

M. T. McGrath, having been convicted of murder in the first degree, appeals.                REVERSED.

For appellant there was a brief over the name of *Weatherford & Wyatt*, with an oral argument by *Mr. J. R. Wyatt.*

For the state there was a brief over the names of *D. R. N. Blackburn*, Attorney-General, *Samuel L. Hayden*, District Attorney, *J. J. Whitney*, and *A. C. Woodcock*, with an oral argument by *Mr. Blackburn* and *Mr. John H. McNary.*

MR. JUSTICE BEAN delivered the opinion of the court.

The defendant was indicted for and convicted of murder in the first degree, and from the judgment of death which followed he appeals. Upon the trial he offered himself as a witness, and gave testimony from which it might be inferred that the deceased had been criminally intimate with his wife. In rebuttal the state called her as a witness, and, against his objections and protest, she was permitted to testify in reference to that matter ; and the admission of her testimony is the principal error assigned and relied upon to reverse the judgment. It is a firmly established rule of the common law, grounded on principles of public policy, that neither husband nor wife is a competent witness in a criminal action against the other, except in cases of personal injury of one to the other : 1 Greenleaf, Ev. § 334. And, while the power of the legislature to change or modify this rule is undoubted, its intention to do so should not be lightly imputed, for, as said by Mr. Justice BREWER, in *Bassett v. United States*, 137 U. S. 505 (11 Sup. Ct. 167): "It cannot be assumed that it is indifferent to sacred things, or that it means to lower the holy relations of husband and wife to the material plane of simple contract. So, before any departure from the rule affirmed through the ages of the common law—a rule having its solid foundation in the best interests of society—can be adjudged, the language declaring the legislative will should be so clear as to prevent doubt as to its intent and limit." Unless, therefore, the legislature has clearly provided that a wife shall be a competent witness against her husband in a criminal action, without his consent, the judgment from which the appeal is taken must be reversed.

As presented, the determination of this question requires a consideration of Subd. 1 of Section 712 and Sec-

tion 713 of the Code of Civil Procedure and Sections 1364 and 1366 of the Criminal Code.  These sections read as follows :

Section 712, subd. 1.  "A husband shall not be examined for or against his wife without her consent, nor a wife for or against her husband without his consent ; nor can either, during the marriage or afterwards, be, without the consent of the other, examined as to any communication made by one to the other during the marriage.  But the exception does not apply to a civil action, suit, or proceeding by one against the other, nor to a criminal action or proceeding for a crime committed by one against the other."

Section 713.  "If a party to the action, suit, or proceeding offer himself as a witness, that is to be deemed a consent to the examination also of a wife, husband, attorney, clergyman, physician, or surgeon on the same subject, within the meaning of subd. 1   *   *   *   of the last section."

Section 1364.  "The law of evidence in civil actions is also the law of evidence in criminal actions and proceedings, except as otherwise specially provided in this code."

Section 1366.  "In all criminal actions, where the husband is the party accused, the wife shall be a competent witness, and when the wife is the party accused, the husband shall be a competent witness ;  but neither husband nor wife, in such cases, shall be compelled or allowed to testify in such cases unless by consent of both of them ; *provided*, that in all cases of personal violence upon either by the other, the injured party, husband or wife, shall be allowed to testify against the other."

The contention for the state is that the defendant, by offering himself as a witness, is deemed to have consented to the examination of his wife.  This argument is based on section 713, which it is claimed is made appli-

cable to criminal actions by section 1364. There are two answers to this position, either of which, to our minds, is conclusive. Section 713 only purports to define what shall be deemed a consent within the meaning of section 712. It does not provide, as a general rule of evidence, that, if a party to an action offer himself or herself as a witness, it shall be deemed a consent in all cases to the examination also of the husband or wife of such party, but it is expressly confined to section 712. The latter section is found in the Code of Civil Procedure, and, so far as it relates to the competency of a husband or wife as a witness against the other, can have no possible application to a criminal action, because the criminal code is complete within itself upon that subject. Prior to 1880, it provided that a husband or wife could not be a witness for or against each other, except where the crime was committed by one against the other, even by consent (Deady's Code, § 167), and since that time only by the consent of both (Hill's Ann. Laws, § 1366). So that, if we look at the case from this standpoint alone, the court erred in holding that defendant, by offering himself as a witness, consented to the examination of his wife.

2. But there is another, and perhaps more cogent, reason for this conclusion. Sections 1365* and 1366 of Hill's Ann. Laws, which make a defendant in a criminal action a competent witness at his own request, and a husband or wife a competent witness for or against the other by the consent of both, were passed in 1880, and are both a part of the same act (Laws, 1880, p. 28), and embody the latest expression of the legislative will upon the subject. At the time of their enactment the legisla-

---

*NOTE.—This section, so far as applicable here, reads as follows: "In the trial of, or examination upon, all indictments * * * before any court or other tribunal against persons accused or charged with the commission of crimes or offenses, the person so charged or accused shall, at his own request, but not otherwise, be deemed a competent witness," etc.—REPORTER.

ture had under consideration both the propriety of the
defendant being permitted to testify in his own behalf
and of modifying the common-law rule in reference to
the competency as a witness of a husband or wife in
criminal cases.    It is but a reasonable presumption,
therefore, that it intended and did embody in the act an
expression of the entire legislative will on the subject;
and when it provided that neither husband nor wife
should, without the consent of both, be allowed or com-
pelled to testify against the other in a criminal action, it
meant an active assent, and not that it could be implied
from the fact that a defendant availed himself of the pro-
vision of another section of the same act, and testified in
his own behalf.    The common-law rule prohibiting either
a husband or wife from being a witness in a cause to
which the other is a party was so strict, and the public
had such an interest in its observance, that, according to
Mr. Greenleaf, it could not be relaxed even by their con-
sent: 1 Greenleaf, Ev. § 340.    Our statute, however,
has so far modified this rule that either may be a witness
for or against the other in a criminal action by the con-
sent of both, but it would be relaxing it to an extent not
contemplated by the legislature, and wholly unauthor-
ized by any statutory provision, to hold that such con-
sent is to be implied from the fact that the defendant
offered himself as a witness.    Statutes of this character
are in derogation of an ancient and well-established rule
of the common law based upon grave reasons of public
policy, and it is therefore never presumed that the legis-
lature intended to make any innovation on such rule,
further than its language imports :    Eudlich, Interp.
St. § 127 ;    *Byrd* v. *State*, 57 Miss. 243 (34 Am. Rep.
440) ;    *Hubbell* v. *Grant*, 39 Mich. 641.    If the legislature
had intended that by offering himself as a witness a de-

35 OR.—8.

fendant in a criminal action should be deemed to have consented to the examination of his wife, it would have been a very simple matter for it to have so provided. It did not see fit to do so, but, on the contrary, expressly declared that she should be a competent witness only by the consent of both, and we are therefore bound to hold that under this statute a wife cannot testify as a witness in a criminal action against her husband, except in cases of personal violence upon her, unless by his consent.

3.   The other assignments of error are substantially without merit.   The cross-examination of the witness Springate may have been restricted to somewhat narrow limits, but, as the extent of a cross-examination rests largely in the discretion of the trial court, it was not reversible error.

It is not entirely clear, from the bill of exceptions, what connection the penknife found on the defendant at the time of his arrest, and which the court allowed to be introduced in evidence, had with the commission of his alleged crime, but it does not seem to us that its admission was error.

The instruction respecting the evidence of the good character of the defendant is in harmony with the rule laid down by this court in *State* v. *Garrand*, 5 Or. 224, and *State* v. *Porter*, 32 Or. 135 (49 Pac. 964).   Judgment reversed, and new trial ordered.          Reversed.