Argued 24 July, decided 20 August, 1907.

## STATE *v*. LUPER.

### 91 Pac. 444.

CONTINUANCE—DISCRETION.

1. The discretion of a trial court in disposing of a motion for a continuance will not usually be reviewed, particularly where the manifest purpose of the motion is to delay the case until the happening of other anticipated events that would disqualify an important witness.

CRIMINAL LAW—HUSBAND AND WIFE—WITNESSES.

2. Section 724, B. & C. Comp., providing that neither husband nor wife shall at any time be examined as to any communication made by one to the other does not apply to criminal proceedings, the criminal code being complete on the subject of the competency of a husband or wife to testify in a criminal prosecution against the other.

PRIVILEGED COMMUNICATIONS AS EVIDENCE—HUSBAND AND WIFE.

3. One of the exceptions to the rule forbidding evidence of communications occurring between husband and wife during their marriage is the protection of the personal rights or liberty of the one to whom they were made, and for that purpose such evidence is competent without the consent of the other spouse.

From Marion: GEORGE H. BURNETT, Judge.

Statement by MR. CHIEF JUSTICE BEAN.

T. J. Luper appeals from a conviction of perjury. In July, 1906, the defendant commenced a suit for divorce against his wife, Lizzie R. Luper, in Department No. 2 of the circuit court for Marion County, alleging that she deserted him in 1904 without cause or provocation and against his will and consent, and had continued her desertion ever since. Service of summons was had upon her by publication, and, as she did not appear within the time required, her default was regularly entered, and

after trial a decree of divorce was rendered as prayed for in the complaint. A short time thereafter Mrs. Luper learned of the decree, and immediately came to Oregon and caused the arrest of defendant for perjury in swearing to the complaint, and at the same time she made an application to open the decree, on the ground that she had a meritorious defense to the suit and had never received a copy of the complaint or summons. Pending her application to open the decree, the district attorney filed an information in Department No. 1 of the circuit court for Marion County against defendant, charging him with perjury in verifying the complaint in the divorce suit. When the application to open the decree came on- for hearing in Department No. 2, defendant, by his attorneys, appeared and consented to the allowance of such motion; but the district attorney interposed, and on his suggestion the court declined to make the order, but took the matter under advisement. The defendant thereupon moved for a postponement of the criminal case until his wife's application to open the decree in the divorce suit could be disposed of, but this motion was denied, and the defendant tried and convicted. From a judgment sentencing him to the penitentiary, he appeals, assigning, among other errors, the overruling of his motion for a continuance and refusal of the trial court to permit him to testify as to statements made to him by his wife regarding her intention to desert him.

REVERSED.

For appellant there was a brief with oral arguments by *Mr. William Henry Holmes* and *Mr. Carey Fuller Martin.*

For the State there was a brief over the names of *A. M. Crawford,* Attorney General, *John H. McNary,* District Attorney, and *C. L. McNary,* with an oral argument by the District Attorney.

Opinion by MR. CHIEF JUSTICE BEAN.

1. There was no abuse of discretion in denying the motion for a continuance. The application therefor did not set out a single fact to entitle defendant to a postponement. Its manifest purpose was to secure a delay until the decree theretofore

granted in the divorce suit could be set aside, and the relation of husband and wife between defendant and Mrs. Luper restored, thus disqualifying her from testifying against him in the criminal action without his consent. Certainly such a state of facts did not entitle him to a continuance as a matter of right. Whether the ends of justice would have been subserved thereby was a question for the trial court, and with its conclusion we must decline to interfere.

2. While the defendant was on the stand, testifying in his own behalf, his counsel offered to interrogate him concerning statements made to him by his wife during the marriage regarding her intention to desert him; but the court, on the objection of the state, refused to allow him to do so, for the reason that evidence of any communications between defendant and his former wife, during their marriage, was incompetent. Section 724 of the Civil Code (B. & C. Comp.), provides that a husband and wife cannot be examined, during the marriage or afterwards, as to any communications made by the one to the other. Whether this section includes all communications between husband and wife, or only such as are confidential, it is not necessary now to consider, because it does not apply to criminal prosecutions: *State* v. *McGrath,* 35 Or. 109 (57 Pac. 321). The Criminal Code is complete within itself as to the competency of the husband or wife to testify in criminal prosecution against the other, and contains no provision governing the proof of communications made by the one to the other. It simply provides that when a husband is the party accused the wife shall be a competent witness, and when the wife is the party accused the husband shall be a competent witness; but neither shall be compelled or allowed to testify, unless by the consent of both, except in cases of personal violence (B. & C. Comp. § 1401), leaving the question of the competency of their testimony either during or after the marriage to be determined by the common law.

3. It is a rule of law, founded upon public policy, the object of which is to secure domestic happiness and tranquillity, that

"all confidential communications between husband and wife, and whatever comes to the knowledge of either by reason of the hallowed confidence which that relation inspires, cannot be afterwards divulged in testimony" (Greenleaf, Evidence, § 337), even after the marriage is dissolved by death or divorce. But the rule which renders incompetent proof of communications between husband and wife, like that which preserves inviolate communications between attorney and client, is subject to some exceptions dictated by natural justice, and among these is that whenever it becomes necessary to disclose such communications, in order to protect the personal rights or liberty of the party to whom they were made, he is relieved from the obligation of secrecy which the law otherwise imposes. Thus, when a disclosure of communications by a client to his attorney is necessary to protect the personal rights of the attorney, as Mr. Justice SELDEN says, "he must of necessity and in reason be exempted from the obligation of secrecy": *Rochester City Bank* v. *Suydam,* 5 How. Prac. 254; *Mitchell* v. *Bromgerger,* 2 Nev. 345 (90 Am. Dec. 550). Also, in a trial of a husband for homicide, it is competent for defendant to testify that his wife told him, immediately before the shooting, that the deceased had threatened to kill him: *Shepherd* v. *Commonwealth,* 119 Ky. 931 (85 S. W. 191). And other similar cases will readily suggest themselves upon a moment's thought.

Now in this case defendant was on trial for perjury in swearing that his wife had deserted him. The truth of this oath, or that it was honestly made, may have depended largely, if not entirely, upon the declarations the wife made to him concerning her intention and characterizing her acts. It would be a hard and unjust rule to deny him the right to protect his personal liberty, and we think the law does not require us to so hold, by giving such declarations in evidence.

Judgment reversed, and new trial ordered.    REVERSED.