Submitted on motion to dismiss appeal June 24, appeal dismissed July 29, appeal reinstated September 23, 1924, argued September 9, affirmed in part and reversed in part September 21, 1926.

## STATE *v.* C. K. MAGESKE, DANIEL HAMMER AND DAVID KIMMEL.

(227 Pac. 1065; 249 Pac. 364.)

**Criminal Law—Appeal Dismissed for Failure to Serve Notice on Clerk of Court.**

1. Where notice of appeal was not served on clerk of trial court, as required by Section 1610, Or. L., as well as on district attorney, as required by Section 1611, appeal will be dismissed and judgment affirmed.

### ON THE MERITS.

**Criminal Law—Grand Jurors' Testimony Held Admissible in Prosecution for Possessing Mash (§ 1426, Or. L.).**

2. Testimony of grand jurors as to statements of defendants before grand jury *held* properly admitted in prosecution for possessing mash, in view of Section 1426, Or. L.

---

1. See 2 R. C. L. 167.
2. See 12 R. C. L. 1039.

Intoxicating Liquors.

3. Evidence *held* sufficient to take case to jury in prosecution for possessing mash.

Criminal Law—Witnesses—Admitting Adverse Testimony of Wife, Who Lived Apart from Husband, in Prosecution Where He was Defendant, Held Error and Prejudicial; "Consent" (§§ 733, 734, 1535, Or. L.).

4. Where defendant testified that he was looking for son when arrested and charged with possessing mash, testimony of wife, who was living apart from him, that he knew his son was working in certain mill, *held* error and prejudicial, since, "consent" to such testimony in criminal case under Section 1535, Or. L., means active consent; Sections 733 and 734 being inapplicable.

Grand Juries, 28 **C. J.**, p. 813, n. 32, 37.
Intoxicating Liquors, 33 **C. J.**, p. 758, n. 80.
Witnesses, 40 **Cyc.**, p. 2228, n. 43, p. 2231, n. 66.
See 17 **C. J.**, pp. 104, 105, 106.

From Clackamas: J. U. CAMPBELL, Judge.

In Banc.

ON MOTION TO DISMISS APPEAL. MOTION ALLOWED.

For the motion, *Mr. I. H. Van Winkle,* Attorney General, and *Mr. L. Stipp,* District Attorney.

No appearance *contra.*

McBRIDE, C. J.—1. The defendants having been convicted of the crime of unlawfully possessing mash, wort and wash fit for distillation, attempted to appeal to this court. The notice of appeal was directed to and served upon the district attorney, but no notice was served upon the clerk of the court.

Section 1610, Or. L., provides that an appeal must be taken by service of a notice, in writing, on the clerk of the court where the judgment-roll is filed. Section 1611 provides that a similar notice must be

4. See 28 **R. C. L.** 524.

served upon the district attorney for the county in which the judgment-roll is filed. In *State* v. *Berger,* 51 Or. 166 (94 Pac. 181), we held that the failure to serve notice upon the clerk rendered an attempted appeal void. The present is a parallel case, and, following our rule in that case, the appeal will be dismissed and judgment affirmed.

APPEAL DISMISSED.

---

ON THE MERITS.

(249 Pac. 364.)

The defendants, C. K. Mageske, Daniel Hammer and David Kimmel were indicted by the grand jury of Clackamas County, Oregon, tried and convicted of the crime of possessing mash, wort and wash, fit for distillation, alleged to have been committed on the thirtieth day of August, 1923.

AFFIRMED AS TO DEFENDANTS HAMMER AND KIMMEL. REVERSED AS TO DEFENDANT MAGESKE.

For appellants Mageske and Hammer there was a brief and oral argument by *Mr. W. L. Cooper.*

For appellants there was a brief over the name of *Mr. Grant B. Dimmick.*

For respondent there was a brief and oral argument by *Mr. Livy Stipp,* District Attorney.

BEAN, J.—The testimony in the case tends to sustain the charge of the indictment and shows facts substantially as follows:

Defendant David Kimmel owned a sixty-acre tract of land in Clackamas County, and his son owned a twenty-acre tract adjoining to the north. On August 30th, the defendants Hammer and Mageske, while

riding in an automobile, were stopped on the road
from Kimmel's place, near the Baker bridge across
the Clackamas River, by officer Green. Just before
they were stopped there was thrown out of their
car a sack containing several bottles of moonshine
whisky. They were arrested, and immediately after-
ward the Kimmel place was searched, and a moon-
shine still, a barrel or two of mash and a complete
distilling outfit were found on the twenty-acre tract
of land adjoining defendant Kimmel's place, about
fifty feet from the line between the two places. The
twenty-acre tract of land belonging to the son was
looked after and in charge of defendant Kimmel. A
part of Kimmel's crop was then on the twenty-acre
tract.

On the day after the arrest, in the immediate vicin-
ity of the still, nine gallons of moonshine whisky were
found. Defendants Hammer and Mageske had en-
deavored through Kimmel to obtain a lease upon the
twenty-acre tract and the document had been drawn
for that purpose, but not yet signed, as the son was
away in California.

Defendants Hammer and Mageske came to the
Kimmel place many times during the month of July,
and oftener during the month of August, and on one
or more occasions stayed part or all of the night.

Just previous to their arrest and on the same day,
the automobile, in which they drove back and forth
between Portland and the Kimmel place, stood in the
road in front of the Kimmel house, and one or both
of the defendants were on the premises. Hammer
and Mageske assisted Kimmel in digging a well or
cistern which was some sixty feet from the place
where the distilling outfit was located. A pump was
in the cistern, or well, and there was lying near it
hose sufficient to extend from the pump to the dugout

where the still was located. The still and its contents
were warm on the evening when the raid was made.

On one occasion defendant Hammer told one of
Kimmel's girls not to go down on the twenty-acre
tract, as there was dynamite there. There was a
truck-garden within a few feet of this cistern in
which the Kimmel family picked cucumbers and other
garden truck about every other day during August,
up to and including the time the still was found. The
dugout for the still was in view of the cistern or well,
and was also in view of the truck patch. The only
trail from the dugout was a well-worn trail, recently
used, leading past the cistern up through Kimmel's
backyard to the road. Mr. Kimmel's grain was
thrashed on the 18th of August, and a quantity of
straw from the thrashing was piled near the cistern
and dugout where the still was located. The dirt
from the dugout was in plain view of the garden fre-
quented by Kimmel and his family, and could not have
been used without Kimmel's knowledge.

2. The defendants, by their counsel, objected and
excepted to the testimony of members of the grand
jury as to the statements of the defendants, given
before the grand jury, and claim error by reason of
the court having admitted such testimony. Or. L.,
Section 1426, provides in part, that

"a member of a grand jury may be required by any
court to disclose the testimony of a witness examined
before such grand jury, for the purpose of ascertain-
ing whether it is consistent with that given by the
witness before the court, or to disclose the testimony
given before such grand jury by any person, upon a
charge against such person for perjury, or upon his
trial therefor."

It has been held by this court several times that the
testimony of a grand jury was inadmissible upon the

trial in a criminal prosecution: *State v. Moran*, 15 Or. 262, 274 (14 Pac. 419); *State v. Rathie*, 101 Or. 339, 349 (199 Pac. 169, 200 Pac. 790); *State v. Ayles*, 74 Or. 153 (145 Pac. 19, Ann. Cas. 1916E, 738); *State v. O'Donnell*, 77 Or. 116 (149 Pac. 536).

The principle gleaned from the books, that when the demand for promoting justice either in a civil or criminal case, outweighs the necessities for keeping the testimony before a grand jury secret, or when the reasons for keeping the testimony private have passed away, the court in its discretion should release the chain of secrecy and admit such evidence in order to prevent the claims of public justice from being unsatisfied: 1 Bishop on Crim. Proced., § 859; Wharton, Crim. Ev., § 510, and note 5 collating the authorities.

3. At the close of the testimony on the part of the State, counsel for defendants moved for a dismissal for the reason there was not sufficient evidence to sustain the indictment.

The testimony was largely circumstantial, nevertheless it was plain. The jury examined the premises and were in a position to understand the purport of the evidence. There was sufficient evidence to be submitted to the jury showing the guilt of the defendants. There was no error in overruling the motion for a directed verdict of not guilty.

4. The defendant, C. K. Mageske, testified as a witness on his own behalf, as an excuse for his being in the vicinity of the Kimmel place on the day the defendants were arrested, and as a material part of his defense, that he was there where there were campers near a creek, looking for his son, preparatory to sending him to school. Upon rebuttal, the State called Mrs. Alvina Mageske, the wife of defendant C. K. Mageske, as a witness, and over the objections and

exceptions of counsel for defendants, she was permitted to testify that at the time defendant Mageske claimed he was in search of his son, who was about seventeen years of age, the son was at or near St. Johns, Oregon, rooming there, and working in a mill and that his father knew it.

The testimony of Mrs. Mageske was material and prejudicial to defendant Mageske's case. It had no bearing upon the case against Hammer and Kimmel. Section 1535, Or. L., provides as follows:

"In all criminal actions, where the husband is the party accused, the wife shall be a competent witness, and when the wife is the party accused, the husband shall be a competent witness; but neither husband nor wife in such cases, shall be compelled or allowed to testify in such cases unless by consent of both of them; provided, that in all cases of personal violence upon either by the other, the injured party, husband or wife, shall be allowed to testify against the other; provided, further, that in all criminal actions for polygamy and adultery, the husband or wife of the accused, shall be a competent witness, and shall be allowed to testify against the other, and without the consent of the other, as to the fact of marriage."

The provision that a husband or wife, in order to be a competent witness against the other, by the consent of both, means an active consent, and not such a consent as may be implied from the fact that the other spouse has testified: *State* v. *McGrath,* 35 Or. 109, 112 (57 Pac. 321). It did not appear in the case that the consent of either the husband or wife was obtained. In the case of *State* v. *Hatcher,* 29 Or. 310 (44 Pac. 584), which was a prosecution for homicide, it was held that an argument by the prosecuting attorney, allowed over the objection of the accused, to the effect that failure to call the wife of the accused, who was present at the homicide, was proof of the

fact that she would have testified adversely to him if called, constituted reversible error, since the wife cannot be compelled to become a witness for her husband, and the record was silent as to whether she had given her consent thereto. It is claimed on behalf of the State that the wife was a competent witness against her husband, under Sections 733 and 734, Or. L., by virtue of the exception contained in Section 734. The provision in that section, that if a party offers himself as a witness, does not apply to criminal proceedings, the Criminal Code being complete within itself under Section 1535 on that subject: *State* v. *McGrath, supra.* See, also, *State* v. *Luper,* 49 Or. 605, 607 (91 Pac. 444).

It is the policy of the law, both common and statutory, to encourage and protect confidential relations between husband and wife; therefore, one spouse cannot be compelled or allowed to testify in a criminal action, where the other is a party, without the consent of both of them; except in cases of personal violence upon either by the other, and in criminal actions for polygamy or adultery. This case does not come within either of the exceptions enumerated: See 4 Jones' Blue Book of Ev., § 751; 1 Greenleaf on Ev. (16 ed.), § 333c, page 493.

It is attempted upon the part of the State to qualify Mrs. Mageske as a witness against her husband for the reason that at the time of the trial they were living separate and apart from each other. That would not remove the incompetency of a husband or wife as a witness for or against each other: 40 Cyc. 2231 (12); *Davis* v. *State,* 96 Tex. Cr. 367 (257 S. W. 1099); *West* v. *Commonwealth,* 194 Ky. 536 (240 S. W. 52).

Adherence to the plain provisions of the law compels a reversal of the judgment as against defendant C. K. Mageske, and the cause will be remanded for a new trial of the indictment against him.

Finding no error in the record as to defendants Hammer and Kimmel, the judgment against them is affirmed.

AFFIRMED AS TO DEFENDANTS HAMMER AND KIMMEL. REVERSED AS TO DEFENDANT MAGESKE.

MCBRIDE, C. J., and BURNETT and COSHOW, JJ., concur.