Argued September 20, affirmed November 3, petition for
rehearing denied November 30, 1972, petition
for review denied January 23, 1973

STATE OF OREGON, *Respondent, v.*
LARRY GRANT LINDLEY
(No. C-549), *Appellant.*
502 P2d 390

*William C. Tharp,* Certified Law Student, Willamette University, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*Thomas H. Denney,* Assistant Attorney General,

Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and FOLEY and THORNTON, Judges.

THORNTON, J.

Defendant appeals from his conviction for criminal activity in drugs, specifically for possession of marihuana. ORS 167.207. After a not guilty plea and bench trial, the circuit court found defendant guilty, sentencing him to a term of three years' imprisonment.

On appeal, defendant's sole contention is that the trial court erred in denying his motion to suppress evidence. The question for our decision is this: Can the police testify to information received from defendant's wife indicating he was carrying marihuana to demonstrate probable cause for their actions in stopping and searching defendant without a warrant and thereafter arresting him?

The facts are not in dispute, and, since this appeal centers on questions of law, they may be outlined briefly. On February 26, 1972, Deputy Sheriff Pommarane of the Curry County Sheriff's office received a call from the defendant's wife. She told the deputy that her husband was driving along a certain road, and that with him, "in his left-hand pocket," he had some marihuana. She also described the car that defendant was driving and reported the license number.

In response to this call, Deputy Pommarane contacted two other deputies and relayed the information

to them. They then intercepted defendant's car, searched the pocket his wife had specified, found marihuana and arrested the defendant.

During the hearing on the suppression motion, Deputy Pommarane testified about the call from defendant's wife. Apparently, the state intended by this testimony to establish the wife's credibility and accuracy, and to define the existence of probable cause for the warrantless search of the defendant.

Defendant insists that this testimony was inadmissible. Relying on the doctrine of marital privilege, he contends that his wife's statements could not be used against him in court in this way.

■ The law recognizes two distinct marital privileges: One prohibits the examination of a husband or wife for or against the other in a legal proceeding; the second bans judicial examination into communications between spouses.

In Oregon, the first privilege is expressed in the initial part of ORS 44.040(1)(a)[1] and in ORS 139.320.[2]

---

[1] ORS 44.040(1)(a) provides:

"(1) There are particular relations in which it is the policy of the law to encourage confidence, and to preserve it inviolate; therefore a person cannot be examined as a witness in the following cases:

"(a) A husband shall not be examined for or against his wife without her consent, or a wife for or against her husband without his consent * * *."

[2] ORS 139.320 provides as follows:

"In all criminal actions in which the husband is the party accused, the wife is a competent witness and when the wife is the party accused, the husband is a competent witness; but neither husband nor wife in such cases shall be compelled or allowed to testify in such cases unless by consent of both of them; provided, that in all cases of personal violence upon

ORS 139.320 specifically applies to criminal proceedings.

The second privilege, which might be termed the "confidential communications" privilege, is contained only in ORS 44.040(1)(a).[9]

Defendant relies on both of these privileges and on both statutes.

■ The doctrine of marital privilege, in any form, would not prohibit the sheriff, in this case, from acting upon the information volunteered by the defendant's wife and subsequently testifying as to the same. The applicable rule is found in *State v. Wilkins,* 72 Or 77, 142 P 589 (1914). Defendant, who was charged with murder, claimed error in the reception in evidence of several letters to and from his wife which were taken from his person when he was arrested.

In analyzing the Oregon marital privilege statutes, the Supreme Court said:

"It will be observed that the statutes are directed against the examination of either spouse

---

either by the other or of personal violence or other unlawful act committed against any minor child of either or both of the parties, the injured party, husband or wife, shall be allowed to testify against the other; provided, further, that in all criminal actions for bigamy, the husband or wife of the accused is a competent witness and shall be allowed to testify against the other without the consent of the other as to the fact of marriage."

[9] ORS 44.040(1)(a) further provides:

"* * * * *

"(a) * * * [N]or can either, during the marriage or afterwards, be, without the consent of the other, examined as to any communication made by one to the other during the marriage. The exception does not apply to a civil action, suit or proceeding, by one against the other, or to a criminal action or proceeding for a crime committed by one against the other."

as a witness, and not against communications between them, the knowledge of which is derived from independent sources. * * * Many precedents * * * maintain the rule that, if the statement is one about which the spouse cannot be examined as a witness, the shield of privilege is never laid aside, no matter into whose possession the communication * * * *may fall.* Other cases * * * forming in our judgment the weight of authority, establish the rule that if the communications * * * are produced by third parties, even if secured surreptitiously, are admissmissible in evidence, and the court will not concern itself about how possession of them was acquired. * * * The essence of the rule seems to be protection of the speaker or writer *from the testimony of the other spouse.* The shield is of no avail against such communications when disclosed by strangers. If either of the marital parties would enjoy the privilege, that one must take care that the secret does not become public." 72 Or at 80-82. (Emphasis supplied.)

Affirmed.