STATE OF OREGON, *Respondent,*
*v.*
CARL GLENN SUTTLES, *Appellant.*
(No. 1580, CA 10564)
588 P2d 635

Bruce David Thomas, Certified Law Student, Salem, argued the cause for appellant. With him on the brief were Gary D. Babcock, Public Defender, and J. Marvin Kuhn, Deputy Public Defender, Salem.

Jesse R. Himmelsbach, Jr., District Attorney, Baker, argued the cause and filed the brief for respondent.

Before Schwab, Chief Judge, and Thornton and Tanzer, Judges.

THORNTON, J.

## THORNTON, J.

Defendant appeals from conviction for sodomy upon his nine-year-old stepson. His sole assignment of error is the admission into evidence of a letter written to his wife while he was incarcerated awaiting trial. Defendant contends the letter should not have been admitted, first, because it is a confidential communication between spouses, and second, because it was irrelevant to the charge upon which he was tried. We reverse.

At the preliminary hearing the stepson testified to the incident. Subsequent to the hearing, defendant wrote the letter in question to his wife, which the wife voluntarily turned over to the prosecution. The letter contained the following language:

"* * * I didn't know I was so sick until I heard the testamony [sic] of the kids. [M]aybe time will cure me and the help of Doctors * * *.

"* * * * *

"Alcohol has made a total wreck out of me and I can't quit it by myself. I need help. * * *"

First, we will consider defendant's contention that the letter was a confidential communication to his spouse and was therefore inadmissible under ORS 44.040(1)(a), which provides:

"(1) There are particular relations in which it is the policy of the law to encourage confidence, and to preserve it inviolate; therefore a person cannot be examined as a witness in the following cases:

"(a) A husband shall not be examined for or against his wife without her consent, or a wife for or against her husband without his consent; nor can either, during the marriage or afterwards, be, without the consent of the other, examined as to any communication made by one to the other during the marriage. The exception does not apply to a civil action, suit or proceeding, by one against the other, or to a criminal action or proceeding for a crime committed by one against the other."

The state strenuously argues that the statute does not apply to criminal trials, relying upon a line of older

Supreme Court cases decided between 1899 and 1926 to that effect.[1] But a careful reading of those cases leads us to the conclusion that the references relied upon by the state were, for the most part, dicta. As one commentator has noted:

"It would appear that proper statutory construction and an analysis of the cases indicate that section 44.040(1) as it applies to the marital privilege has not as yet been excluded from criminal cases. But it appears equally obvious that the trend in the cases is to cite the dicta and apparent meaning of the earlier cases, so that in the future the matter may indeed come to be 'settled' in favor of excluding the privilege from criminal cases." Hurley, *Privileged Communications in Oregon,* 36 Or L Rev 132, 136-37 (1957).

Whatever "trend" is discernible from the earlier cases seems to have ceased in 1926. None of the cases cited by the state has since been relied upon by the Supreme Court for the stated proposition, and the Supreme Court has indicated more recently that the rule is otherwise.

In *State v. Bengtson,* 230 Or 19, 29, 367 P2d 363, 96 ALR2d 150 (1962), the court construed ORS 44.040(1)(f), involving the confidentiality of communications made to a stenographer by her employer. The court there held that the communication was not made to the stenographer acting in that role, and was therefore admissible; but there was no intimation that the statute was not applicable in that criminal proceeding. One year later, in *State v. Betts,* 235 Or 127, 384 P2d 198, 7 ALR3d 1445 (1963), the court indicated that the proper construction of ORS 44.040 depends upon the historical context in which the privilege was created, and the specific verbal context in which it was placed by the legislature. Noting that the legislature limited the doctor-patient privilege codified at ORS

---

[1] *State v. McGrath,* 35 Or 109, 57 P 321 (1899); *State v. Luper,* 49 Or 605, 91 P 444 (1907); *State v. Wilkins,* 72 Or 77, 142 P 589 (1914); *Pugsley v. Smyth,* 98 Or 448, 194 P 686 (1921); *State v. Mageske et al,* 119 Or 312, 227 P 1065, 249 P 364 (1926).

44.040(1)(d) to civil actions, and further noting the historical antipathy for the privilege, the court held it to not apply in criminal cases. In so deciding, the court made clear that the statute is divisible and dependent upon the specific references within each subsection setting forth a different privilege. In this regard the court observed that the marital communications privilege is only partially limited:

"* * * The specific words of the statute restrict parts of it to civil actions, a part to criminal proceedings, and parts have no restrictions stated. In the subsection relating to husband and wife it states, 'The exception does not apply to a civil action, suit or proceeding, by one against the other, or to criminal action or proceeding for a crime committed by one against the other.' " 235 Or at 138.

Applying the court's modern analysis, the marital communications privilege has at least in principle been long recognized and respected. 8 J. Wigmore, Evidence 644-45, § 2333 (McNaughton rev 1961). And the court's observation that the privilege is only partially restricted by statute is a clear indication that the privilege is not more limited.

■ Although this court has applied ORS 44.040 in several instances,[2] only once have we been called upon to construe the marital communications privilege of ORS 44.040 (1)(a). In that case, *State v. Lindley,* 11 Or App 417, 419, 502 P2d 390 (1972), *rev den* (1973), we held that ORS 44.040 (1)(a) codifies the common-law " 'confidential communications' privilege," but that the facts did not bring the case within the privilege. We did not hold the privilege inapplicable to criminal cases. It is our conclusion that ORS 44.040(1)(a), while perhaps inartfully drawn, is a codification of the

---

[2] *See, e.g., State v. Bilton,* 36 Or App 513, 585 P2d 50 (1978) (attorney-client); *State v. Wright,* 31 Or App 1351, 572 P2d 669 (1977) (doctor-patient); *State v. Thompson,* 30 Or App 379, 567 P2d 132, *rev den* 281 Or 1 (1977) (attorney-client); *State v. Forsyth,* 20 Or App 624, 533 P2d 176, *rev den* (1975) (priest-penitent); *State v. Fleischman,* 10 Or App 22, 495 P2d 277, *rev den* (1972) (public officer-public documents).

confidential communications privilege recognized at common law as distinct from the privilege against testifying.[3]

■ That the privilege applies is only the first hurdle. We now turn to the exceptions to the privilege, which originate in the common law, in other legislative enactments and in the statute itself.

The state argues that

"* * * even if *ORS 44.040* should be held to have application in criminal cases, the letter was not a confidential communication. It was written by the defendant while he was in jail. He had had ample experience with conditions of confinement, and was bound to know third persons had the right to read his out-going mail. See *State v. McCoy,* 270 Or. 340, 527 P2d

---

[3]The two privileges are in lieu of the common-law precept that spouses are incompetent to testify. Although incompetency is sometimes thought of as a third form of privilege, *see, United States v. Allery,* 526 F2d 1362, 1365 (8th Cir 1975), there are in actuality only two privileges. One is termed the "anti-marital facts" privilege, whereby one spouse could prevent the other from testifying against the other although otherwise competent; the other is the "marital confidences" privilege, or "confidential communications" privilege, which prohibits testimony concerning intraspousal, confidential communications arising from the marital relationship. *See generally,* 8 J. Wigmore, Evidence 642-73, §§ 2332-2341 (McNaughton rev 1961); McCormick, Evidence 161-72, §§ 78-86 (2d ed E Cleary 1972); *State v. Lindley,* 11 Or App 417, 502 P2d 390 (1972), *rev den* (1973). In Oregon, the competency of spouses to testify has been established by statute, ORS 136.665.

"The effect of the statute has been to remove the subject matter from the field of incompetency of witnesses as at common law and to transfer it to the field of privilege. * * *" *State v. Dennis,* 177 Or 73, 97, 159 P2d 838, 161 P2d 670 (1945); *State v. LeFils,* 209 Or 666, 668, 307 P2d 1048 (1957).

In *State v. Wilkins,* 72 Or 77, 142 P 589 (1914), the court, with no reference to either of its previous opinions on the matter, held that there was no confidential communications privilege in Oregon. The court's rationale was predicated upon the statutory reference to the examination of *witnesses.* Accordingly, the court held, there was only the privilege against testifying. The analysis of *State v. Luper,* 49 Or 605, 91 P 444 (1907), appears more sound. There the court, having held that the equivalent of ORS 44.040(1)(a) (§ 724, Civil Code (B & C Comp)) did not apply to criminal proceedings, turned to the common-law formulation. Such an approach would provide an alternative ground for the holding herein.

725 (1974) and *Procunier v. Martinez,* 416 U.S. 396, 94 S.Ct. 1800, 40 L.ed2d 224 (1974). * * *"

The answer is that the settled law in Oregon is that the communication does not have to be "confidential" if the defendant could reasonably expect that the material would not be published. Although "[i]t is generally held that communications made in the presence of third persons are not privileged," *Pugsley v. Smyth,* 98 Or 448, 480, 194 P 686 (1921),[4] we cannot *assume* the defendant's mail was read by third persons. At trial the state's attorney argued, as he does here, that the letters were not confidential, having been read by jail personnel. Defendant's counsel rejoined:

> "That is not my understanding of the facts. My understanding of the facts is that the letters of prisoners held down there for trial are not censored and that's what's been represented to the defendant. * * *"

The facts having been disputed, it was incumbent upon the state to come forward with evidence to bring itself within the exception carved out by *Pugsley.* It did not. Even assuming arguendo that the fact that the letter had been read by jail personnel might bring the case within the exception set forth in *Pugsley,* there was no evidence here that the letter had been read by jail personnel.

■ Closely related to the issue of confidentiality is the issue of availability of the letter. Of course, if the spouse's production of the letter for the prosecution is sufficient to vitiate the confidentiality of the letter, it is properly admissible. On this issue, the authorities appear to distinguish between those communications which are produced through happenstance, analogous to an eavesdropper, and those communications which are voluntarily produced by the recipient of the communication, analogous to a breach of confidentiality.

---

[4] *See also, Patterson v. Skoglund,* 181 Or 167, 183, 180 P2d 108 (1947); *Coles v. Harsch,* 129 Or 11, 23, 276 P 248 (1929).

The case of *State v. Wilkins,* 72 Or 77, 142 P 589 (1914), involved the admissibility of letters from spouse to defendant seized from defendant's person upon his arrest. The court apparently limited its sanction of the introduction of the letters to the facts of the case, *i.e.,* they were forcefully taken from the defendant, and were not voluntarily divulged by a party to the communication.[5]

> "It will be observed that the statutes are directed against the examination of either spouse as a witness, and not against communications between them, *the knowledge of which is derived from independent sources. * * *"* 72 Or at 80. (Emphasis supplied.)

Several passages in the court's opinion lend support to the proposition that a voluntary breach of the confidence gives rise to a different rule.[6]

The opinion's cited language and the apparent analysis contained therein comport with the general rule as discussed by Wigmore.

> "For *documents* of communication coming into the *possession of a third person,* a distinction should obtain,

---

[5]Nor is *State v. Lindley, supra,* to the contrary. That case involved a spouse's revelation of the fact her husband was transporting marihuana. There is no indication from the opinion that she thereby divulged any confidential communication. On this point, Wigmore notes:

> "* * * The protection therefore extends only to *communications,* not to acts which are in no way communications. * * *" 8 J. Wigmore, Evidence 657, § 2337 (McNaughton rev 1961).

Furthermore, of course, the court in *Lindley* was not inquiring into communications between spouses, but into communications between an informant and a police officer giving rise to probable cause to search.

[6]Analogizing to the situation in which an eavesdropper vitiates the confidentiality of a communication, the court stated:

> "* * * It is not perceived that any difference in principle can exist because the communication is in writing and *has fallen into the possession of strangers by whom it is disclosed. * * ** [I]f the communications in question, although in writing, *are produced by third parties,* even if secured surreptitiously, are admissible in evidence, and the court will not concern itself about how possession of them was acquired. * * *" 72 Or at 81. (Emphasis supplied.)

> "* * * The shield is of no avail against such communications *when disclosed by strangers. * * *"* 72 Or at 82. (Emphasis supplied.)

analogous to that already indicated for a client's communications * * *. That is, if they were obtained from the addressee spouse by voluntary delivery, they should still be privileged * * *; but if they were obtained surreptitiously or otherwise without the addressee's consent, the privilege should cease. * * *" 8 J. Wigmore, Evidence 667, 668, § 2339 (McNaughton rev 1961).

Wigmore's analysis appears, by virtue of the analogy to a client's communications to an attorney, to be founded upon a perceived duty on the part of the addressee spouse to refrain from voluntary disclosures, the breach of which does not vitiate the privilege.

■ The state further argues that even if ORS 44.040 is applicable to criminal trials, exceptions to the privilege would allow the disclosure of the information at bar. One of the exceptions the state relies upon has its origin in the common law and is currently expressed in ORS 44.040(1)(a): "a criminal action or proceeding for a crime committed by one against the other." The issue, then, is whether sodomy against a stepson is a "crime" committed against the boy's mother, spouse of the defendant. There is a wide split of authority on the issue. *Compare Chamberlain v. State,* 348 P2d 280 (Wyo 1960) *with People v. Oyola,* 6 NY2d 259, 266, 189 NYS2d 203, 160 NE2d 494 (1959). Most recently, the Eighth Circuit has analyzed the split of authority and concluded that rape of one's stepdaughter is an offense against the girl's mother. *See, United States v. Allery,* 526 F2d 1362 (8th Cir 1975). It is our conclusion, however, that the wrong (or crime) here was a wrong against the child. To construe the statutory language any more broadly, in our view unnecessarily stretches the plain language of the legislature. We therefore reject the "liberal view" as Wigmore refers to the construction holding a crime against one of the family members to be a crime against the spouse. *See,* 8 J. Wigmore, Evidence 248, § 2239 (McNaughton rev 1961).

The state would rely upon a second exception, claimed to exist in all judicial proceedings involving child abuse, based upon the interrelationship of ORS 418.775, 418.740, 418.750 and 418.755.[7]

Those statutes, set out in the margin, provide that persons who file reports to a local police department, or to the Children's Services Division, do not violate any privileges by making such a report. They further indicate that in subsequent legal proceedings arising out of those reports, the report itself shall be admissible and shall not be deemed in violation of the physician-patient privilege, the husband-wife privilege, or the privilege extended to staff members of schools and to nurses under ORS 44.040. We do not believe, however, that a communication between

---

[7] ORS 418.775 provides in part:

"(1) In the case of abuse of a child, as defined in ORS 418.740, the physician-patient privilege, the husband-wife privilege, and the privilege extended to staff members of schools and to nurses under ORS 44.040 shall not be a ground for excluding evidence regarding a child's abuse, or the cause thereof, in any judicial proceeding resulting from a report made pursuant to ORS 418.750.

"* * * * *."

ORS 418.740 provides in relevant part:

"As used in ORS 418.740 to 418.775, unless the context requires otherwise:

"(1) 'Abuse' means:

"* * * * *

"(c) Sexual molestation."

ORS 418.750 provides in pertinent part:

"Any public or private official having reasonable cause to believe that any child with whom he comes in contact in his official capacity has suffered abuse, or that any adult with whom he comes in contact in his official capacity has abused a child shall report or cause a report to be made *in the manner required in ORS 418.755.* * * *" (Emphasis supplied.)

ORS 418.755 provides in relevant part:

"An oral report shall be made immediately by telephone or otherwise to the local office of the Children's Services Division or to a law enforcement agency within the county where the person making the report is at the time of his contact. * * * When a report is received by a law enforcement agency, the agency shall immediately notify the local Children's Services Division within the county where the report was made."

[ 704 ]

spouses substantially after the incident, and not part of the initial report, is included within the exception.

■ Accordingly, it is our conclusion that the spousal communication privilege existed in this case, and that no exceptions are applicable. It was error to admit the letter. Given the emotional nature of the charges, and the nature of the letters, we cannot say with sufficient certainty that the admission of the letter was harmless. Therefore, the judgment must be reversed for retrial.

Because of our disposition of the first assignment of error, we need not reach the issue of the relevance of the letter.

Reversed and remanded for a new trial.