Argued and submitted December 5, 1978, reversed and
remanded for new trial July 3, 1979

BACCELLERI,. *Appellant,*

*v.*

HYSTER COMPANY, *Respondent.*

(No. 413-317, SC 25308)

597 P2d 351

Raymond J. Conboy, of Pozzi, Wilson, Atchison, Kahn & O'Leary, Portland, argued the cause for appellant. With him on the briefs was Mark Braverman, Portland.

E. Richard Bodyfelt, of Bodyfelt & Mount, Portland, argued the cause for respondent. With him on the brief was Barry M. Mount, Portland.

DENECKE, C. J.

**DENECKE, C. J.**

The jury returned a verdict for the defendant in this products liability action brought to recover damages for injuries plaintiff incurred when a forklift truck manufactured by the defendant backed over the plaintiff's legs. Plaintiff appeals and we reverse.

Plaintiff worked as a checker on the docks in Portland. He was checking thirty-foot-long bundles of angle iron which had been unloaded from a ship and placed on the dock by the forklift operator. Plaintiff was kneeling down checking a bundle which was between six to twenty feet from the forklift. The forklift operator had just deposited another bundle and was backing the forklift when he ran over plaintiff's legs.

Plaintiff contends the forklift was unreasonably dangerous and defective because it lacked both visual and audible warning alarms to alert persons that the machine was backing.

Plaintiff submitted his case on the theory of strict liability in tort. Over plaintiff's objection, the trial court instructed the jury that assumption of risk was a complete defense. *Hornbeck v. Western States Fire Apparatus*, 280 Or 647, 572 P2d 620 (1977), decided after the trial of this case, held that assumption of the risk as a complete bar had been abolished. Defendant concedes the instruction was in error but contends it was not prejudicial because defendant's motion for a directed verdict should have been granted. Defendant contends there was no evidence that the forklift was unreasonably dangerous or that any defect in the forklift caused plaintiff's injury.

We stated the test for determining when a product has an unreasonably dangerous defect in *Phillips v. Kimwood Machine Co.*, 269 Or 485, 492, 525 P2d 1033 (1974):

"* * * A dangerously defective article would be one which a reasonable person would not put into the

[5]

stream of commerce *if he had knowledge of its harmful character.* The test, therefore, is whether the seller would be negligent if he sold the article *knowing of the risk involved.* Strict liability imposes what amounts to constructive knowledge of the condition of the product." (Footnotes deleted.)

Most of the evidence related to the allegation that the forklift was defective because it did not have an audible alarm that would be activated when the forklift was put in reverse.

■ Pursuant to the *Kimwood* test, the question is whether there was evidence that the forklift, without an audible warning which would be activated when the forklift was placed in reverse gear, created an unreasonable risk of harm? We conclude there was such evidence.

Two experts testified that forklifts of the kind involved here were dangerous because the operator's vision to the rear was somewhat impaired and the operator was unable to devote full attention to the rear when backing. They also testified that reverse audible alarms help to eliminate backing injuries by warning persons in the area that the machine is in reverse.

One of these experts testified that the Corps of Engineers had started requiring back up alarms on equipment used on Corps projects in 1951. The requirement had been imposed because of five deaths in the previous year caused by backing equipment. In the ensuing 23 years on Corps projects, only three people had been killed in backing accidents. In two of those, the equipment did not have functioning audible alarms and in the third, the deceased worker had impaired hearing. The witness did not know how many of the accidents involved forklifts, but he testified large machinery was involved in each of the accidents.

Plaintiff presented evidence that audible back up alarms were available long before the defendant sold its forklift in 1968 and that such alarms cost from $35 to $80.

[6]

■ The defendant argues that it has no duty to warn of an open and obvious danger. Even if this is a different defense from implied assumption of the risk, which has been abolished as a bar, the jury need not find the danger was open and obvious. The plaintiff testified that while he knew the forklift was in the vicinity, he did not know or anticipate that it would back over him. Whether plaintiff was reasonable in his knowledge or anticipation is a question of fact.

■ Defendant also contends that there was no evidence that the absence of an alarm caused plaintiff's injuries. It is true there is no testimony that this accident would not have happened if an alarm had been provided, but there seldom is such evidence in a case in which the charge is failure to warn. It is sufficient to prove causation if there is evidence or the jury can draw an inference that a warning is generally effective in preventing such accidents.

The trial court correctly denied defendant's motion for a directed verdict.

If this case is retried, a different aspect of the issue of assumption of the risk is almost certain to arise, and we conclude that in the interest of litigation efficiency we should resolve that issue now.

As is true of many legal problems, the problem is one of the meaning of words, — semantics. The phrase, "assumption of the risk," is a common legal phrase which has been loosely used to express several results flowing from several courses of conduct. In *Ritter v. Beals*, 225 Or 504, 510-521, 358 P2d 1080 (1961), we dissected the meaning of the phrase. We observed that some conduct which is pleaded as the defense of assumption of the risk is in reality contributory negligence and evidence of such conduct is admissible if it is pleaded as contributory negligence. In other instances assumption of the risk describes a situation in which the defendant is free from fault. *Hunt v. Portland Baseball Club*, 207 Or 337, 296 P2d 495

[7]

(1956), was thought to be an example of the latter category.

In 1975 the legislature enacted a statute providing: "The doctrine of implied assumption of the risk is abolished." ORS 18.475(2), Oregon Laws 1975, ch 599. Our general question is, what did the legislature intend to abolish by enacting that statute? This statute was enacted during the statutory evolution of comparative fault.

In 1971, ORS 18.470 enacted the law of comparative negligence to replace the court-made law that any contributory negligence on the part of plaintiff was a bar to plaintiff's recovery:

"Contributory negligence, including assumption of the risk, shall not bar recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or injury to person or property if such negligence contributing to the injury was not as great as the negligence of the person against whom recovery is sought, but any damages allowed shall be diminished in the proportion to the amount of such negligence attributable to the person recovering."

In 1975, ORS 18.470 was amended to take the form that is applicable to the present case. It now provides:

"Contributory negligence. shall not bar recovery in an action by any person or his legal representative to recover damages for death or injury to person or property if the fault attributable to the person seeking recovery was not greater than the combined fault of the person or persons against whom recovery is sought, but any damages allowed shall be diminished in the proportion to the percentage of fault attributable to the person recovering. This section is not intended to create or abolish any defense."

In the same chapter making this amendment the section was enacted abolishing the doctrine of assumption of the risk. Oregon Laws 1975, ch 599, ORS 18.475(2).

This statute poses the question: Did this latter statute prohibit comparing the conduct of the defendant with conduct of the plaintiff, which conduct was sometimes labeled assumption of the risk but was in reality a species of contributory negligence? The words of the statute are not free from doubt but the legislative history makes it quite clear that the legislature did not intend to prohibit the comparison with such conduct.

Senate Bill 797 became ORS 18.475. A memorandum dated May 28, 1975, from State Representative David Frohnmayer to the House Judiciary Committee contains this comment on § 5 of Senate Bill No. 797:

> "Section 5 abolishes the doctrine of implied assumption of the risk. *Ritter v. Beals*, 225 Or 504 (1961) subsumed under contributory negligence the form of assumption of the risk in which plaintiff voluntarily and unreasonably encounters a known risk; *this type of assumption of the risk is unaffected by Section 5 and should be pled as contributory negligence.*" (Emphasis added.)

The House version of this bill, HB 2879, was accompanied by this observation from the Judiciary Committee:

> "However, contributory negligence, assumption of the risk, and other defenses overlap and a plaintiff's conduct may often be characterized in a number of ways * * *. Therefore, contributory negligence as used in the statute should be broadly construed to include: '* * * the form of contributory negligence which consists of involuntarily [*sic*] and unreasonably proceeding to encounter a known danger and commonly passes under the name of assumption of the risk * * *.' HB 2879 (Appendix D, House Judiciary Committee. 4/3/75.)[8]

---

[8] In addition, the minutes of this Committee for April 17, 1975, contain this comment at p. 11:

"Vice Chairman Stults, who was presiding at this point * * * asked Mr. Rike if he was satisfied it would be safe to take out the assumption of risk situation. Mr. Rike said this was handled in section 4. As long

as it was clear that contributory negligence includes any unreasonable conduct on the part of the plaintiff, there should be no problem."

■ This history is clearly to the effect that at least House Judiciary was informed that the section abolishing the doctrine of assumption of the risk did not prohibit the trier of fact from weighing the plaintiff's conduct which formerly was a subspecies of contributory negligence called assumption of the risk and comparing it with defendant's fault.

■ We hold that conduct which was sometimes labeled assumption of the risk but which is a subspecies of contributory negligence can be compared in the apportionment of damages.

A further question remains: Can this form of contributory negligence be used for comparison in apportioning damages when plaintiff is proceeding on the theory of strict liability in tort?

Conceptually, applying the doctrine of comparative fault in action based upon strict liability in tort offers some problems. This court, however, has answered part of the problem and held that contributory negligence can be a bar in strict liability cases. *Findlay v. Copeland Lumber Co.*, 265 Or 300, 509 P2d 28 (1973).

Now that contributory negligence is not a bar but the plaintiff's fault is compared to the defendant's fault and damages apportioned accordingly, a further conceptual problem is present.

Two courts have recently confronted this problem and reached the conclusion that despite the forfeiture of a "degree of semantic symmetry," comparative fault was applicable in strict liability in tort. *Daly v. General Motors Corp.*, 20 Cal3d 725, 734-736, 144 Cal Rptr 380, 575 P2d 1162, 1169 (1978); *Butaud v. Suburban Marine & Sport. Goods, Inc.*, 555 P2d 42, 45 (Alaska 1976).

Whether these decisions reach the most preferable results is immaterial. It is a feasible result and one

which the legislature could reasonably adopt. The question, therefore, is did the Oregon Legislature intend to apply comparative fault in strict liability cases?

Again, the legislative history is informative. The memorandum from State Representative Frohnmayer, previously quoted, stated:

> "Finally Section 1 provides for apportionment to the extent that plaintiff's conduct may be characterized as contributory negligence and would otherwise completely bar recovery. Section 1 is not intended to create new defenses. (However, see section 2.) Specifically, this Act is not meant to require apportionment of those types of contributory negligence held not to constitute a defense to strict liability. [This statement is followed by footnote 5, which reads: *Findlay v. Copeland Lumber*, 265 Or 300, 500 P.2d 28 (1973), adopts Restatement (Second) Torts, Section 402A, Comment n, which reads in part, "contributory negligence of a plaintiff is not a defense when such negligence consists merely in a failure to discover the defect in the product, or to guard against the possibility of its existence." * * *.' "

We realize that this kind of legislative history has its limitations in attempting to discern the intent of the legislature. It consists of a memorandum from one legislator and another memorandum probably prepared by the staff of the committee, whereas, a majority of 60 House members and 30 Senators, for reasons unknown and unexplained to us, voted to pass the legislation. However, in this instance we are of the opinion that the history is persuasive. The subject of the legislation was extremely technical and the terminology involved has caused lawyers and judges much difficulty. In such instances the careful distinctions drawn by one knowledgeable legislator and the committee staff would be of particular influence on the passage of the legislation.

Counsel for plaintiff do not strongly argue that the comparative fault statutes do not apply. They state, "* * * nothing much would be lost if the court were to hold that plaintiff's 'assumption of risk' or other fault

[11]

is to be measured upon remand against the defects of defendant's product." They do argue, however, that if such a holding be made, it be made prospectively because *Hornbeck v. Western States Fire Apparatus, supra* (280 Or 647), appears to decide to the contrary and many cases have been tried since the decision in *Hornbeck* on the assumption that *Hornbeck* decided that the comparative fault statutes were not applicable to strict liability cases.

*Hornbeck* did not so decide. *Hornbeck* was an extension of *Thompson v. Weaver,* 277 Or 299, 560 P2d 620 (1977). *Thompson* was a negligence action not involving a defective product. The jury found plaintiff's injury to be 75 per cent the fault of the defendant and 25 per cent the fault of plaintiff. The trial court granted defendant's motion for a judgment notwithstanding the verdict. Defendant argued that plaintiff had assumed the risk. We held: "Implied assumption of the risk is abolished as a basis for barring recovery on either theory [contributory negligence or no duty]." 277 Or at 304.

*Hornbeck* was a products liability case brought both on the theory of negligence and strict liability. Defendant alleged both contributory negligence and assumption of the risk, the latter as a complete bar.

*Hornbeck* held that by reason of the statutory change, conduct denominated assumption of the risk (which would include conduct amounting to contributory negligence) was no longer a complete bar to recovery in strict liability. It did not purport to decide whether comparative fault was applicable in strict liability cases.

■ We hold that Oregon statutes provide that comparative fault is applicable in strict liability in tort. Whether defendant has adequately pleaded or proved that kind of contributory negligence which can qualify as comparative fault in a strict liability case was not in issue on this appeal. If a new trial is held those issues

[12]

will be decided upon the state of the pleadings and proof at the new trial.

Plaintiff has made other assignments of error; however, none of these will necessarily arise at a new trial if one is held; therefore, we will not consider them.

Reversed and remanded for a new trial.