597 P.2d 786 (1979)
287 Or. 3
The STATE of Oregon, Petitioner,
v.
Carl Glenn SUTTLES, Respondent.
TC 1580; CA 10564; SC 26044.
Supreme Court of Oregon, In Banc.[*]
Argued and Submitted May 30, 1979.
Decided July 3, 1979.
Jesse R. Himmelsbach, Jr., Dist. Atty., Baker County, argued the cause and filed the brief for petitioner.
*787 Bruce David Thomas, Certified Law Student, Salem, argued the cause for respondent. With him on the brief were Gary D. Babcock, Public Defender, and J. Marvin Kuhn, Deputy Public Defender, Salem.
TONGUE, Justice.
This is a criminal case in which defendant appealed from his conviction for sodomy upon his nine-year-old stepson. Defendant's sole assignment of error was that a letter he wrote to his wife while in jail awaiting trial was improperly admitted into evidence. The Court of Appeals agreed, reversing the judgment of conviction and remanding the case for a new trial. 37 Or. App. 695, 588 P.2d 635 (1978). We granted review because of our concern with the question whether the Court of Appeals was correct in its holding that the letter was privileged as a "confidential communication" in a criminal prosecution for sodomy upon a child.
Defendant was arrested on September 9, 1977, and charged with committing first degree sodomy upon his stepson, Danny. The alleged incident took place sometime between August 10, 1977, and August 20, 1977. These proceedings were initiated by a police officer to whom Danny related his story. A preliminary hearing was held on September 16th, at which Danny testified that defendant had committed the crime as charged. Defendant was present at that hearing.
Thereafter, while awaiting trial in the Baker County Jail, defendant wrote the letter in question to his wife. The letter contained the following passages:
"* * * I really don't know what to write, except that I am going to the state hospital at Salem for awhile, and from there, I don't know. I asked for help, God I need it. I didn't know I was so sick until I heard the testimony of the kids. [M]aybe time will cure me and the help of Doctors * * *.
"* * *
"Alcohol has made a total wreck out of me and I can't quit it by myself. I need help. * * *"
Defendant's wife voluntarily delivered this letter to the district attorney. The letter was then offered by the prosecution as evidence at trial. It was admitted over defendant's objection that the letter was privileged as a marital communication, and was also either irrelevant or that any probative value it might have was outweighed by its prejudicial effect.
On appeal, the Court of Appeals concluded that the letter was a marital communication for purposes of ORS 44.040(1)(a), which it held to apply to criminal trials, and was therefore inadmissible unless an exception to the privilege were found to apply. 37 Or. App. at 699-700, 588 P.2d 635. After examining the various exceptions urged by the state, the Court of Appeals concluded that no exception was applicable, and that the letter was improperly admitted into evidence. 37 Or. App. 705, 588 P.2d 635.[1] The Court of Appeals therefore reversed the judgment of conviction and remanded the case for a new trial.
The state then petitioned for review by this court, presenting three basic arguments for reversal of the Court of Appeals decision:
(1) That ORS 44.040(1)(a) does not apply to criminal prosecutions;

*788 (2) That "[w]hen a father-husband commits sodomy or rape upon his stepchild, he also commits a crime against the mother-wife, within the meaning of the exception to ORS 44.040(1)(a);" and
(3) That the letter was admissible by virtue of ORS 418.775.
In accepting review, this court instructed counsel to present arguments directed to the question whether ORS 418.775 abrogated the husband-wife communications privilege in cases involving child abuse, and therefore made the letter admissible. Because we now conclude that ORS 418.775 does this, we need not decide the other contentions made by the state. We will assume, however, for purposes of this case, that ORS 44.040(1)(a) is applicable to criminal prosecutions.
We begin our analysis by noting that two distinct marital privileges existed at common law. One privilege, which may be designated the "testimonial" privilege, prohibited the examination of a husband or wife for or against the other in a legal proceeding, with some exceptions. The second, which may be called the "communications" privilege, prohibited examination into confidential communications between spouses, again with some exceptions. McCormick on Evidence, § 66, p. 144 and § 78, p. 161 (2d ed. 1972).
These two privileges have been codified by statute in Oregon in ORS 44.040(1)(a), as follows:
"(1) There are particular relations in which it is the policy of the law to encourage confidence, and to preserve it inviolate; therefore a person cannot be examined as a witness in the following cases:
"(a) A husband shall not be examined for or against his wife without her consent, or a wife for or against her husband without his consent [the testimonial privilege]; nor can either, during the marriage or afterwards, be, without the consent of the other, examined as to any communication made by one to the other during the marriage [the communications privilege]. The exception does not apply to a civil action, suit or proceeding, by one against the other, or to a criminal action or proceeding for a crime committed by one against the other."
This case involves the "communications" privilege.[2]
If, as we have assumed, ORS 44.040(1)(a) is applicable to criminal trials, it is made so by ORS 136.430, which provides:
"The law of evidence in civil actions is also the law of evidence in criminal actions or proceedings, except as otherwise specifically provided in the statutes relating to crimes and criminal procedure." (Emphasis added)
The "statutes relating to crimes and criminal procedure" include a provision specifically relating to the marital privilege. ORS 136.655, enacted in 1880 (O.L. 1880, sec. 2, pp. 28-29), states as follows:
"In all criminal actions in which the husband is the party accused, the wife is a competent witness and when the wife is the party accused, the husband is a competent witness; but neither husband nor wife in such cases shall be compelled or allowed to testify in such cases unless by consent of both of them; provided, that in all cases of personal violence upon either by the other or of personal violence or other unlawful act committed against any minor child of either or both of the parties, the injured party, husband or wife, shall be allowed to testify against the other * * *." (Emphasis added)
In other words, in a criminal case such as this one involving an unlawful act committed against a child, ORS 136.655 specifically abrogates the "testimonial" privilege and would permit the wife here to "testify" against the defendant-husband. It does not, however, specifically abrogate the communications privilege. For this reason, if *789 (as we have assumed) ORS 44.040(1)(a) applies to criminal trials, and if no exception is applicable, a letter in a case such as this one would be covered by the communications privilege found in ORS 44.040(1)(a) and would therefore be inadmissible unless (as required by ORS 136.430) that privilege is specifically abrogated elsewhere.
ORS 418.775, however, would appear to do just that  abrogating both the testimonial and communications privileges found in ORS 44.040(1)(a) in cases involving the "abuse" of a child, which is defined in ORS 418.740(1)(c) to include "[s]exual molestation." ORS 418.775 provides:
"(1) In the case of abuse of a child, as defined in ORS 418.740, the physician-patient privilege, the husband-wife privilege, and the privilege extended to staff members of schools and to nurses under ORS 44.040 shall not be a ground for excluding evidence regarding a child's abuse, or the cause thereof, in any judicial proceeding resulting from a report made pursuant to ORS 418.750.
"(2) In any judicial proceedings resulting from a report made pursuant to ORS 418.750, either spouse shall be a competent and compellable witness against the other."
Defendant contends, however, that ORS 418.775 does not abrogate the ORS 44.040(1)(a) communications privilege in this case for two reasons: First, defendant contends that ORS 418.775 does not meet the requirement of ORS 136.430 (quoted above) that "the law of evidence in civil actions" (i.e., the communications privilege found in ORS 44.040(1)(a)) can only be abrogated by a "statute relating to crimes and criminal procedure." Defendant argues that 418.775 is civil in nature, being found in those provisions of the Oregon Revised Statutes dealing with Child Welfare Services, and does not fall within the chapters relating to crimes and criminal procedure.[3]Second, defendant contends that "[t]he words and design of the statutory body encompassing ORS 418.740 to 418.775" clearly indicate that the words "any judicial proceeding" found in ORS 418.775(1) were not intended to include criminal proceedings so as to abrogate the husband-wife communications privilege in criminal proceedings. Quoting from ORS 418.745,[4] defendant argues as follows:
"The purpose of ORS 418.740 et seq. is to protect the welfare of abused children by requiring mandatory reports and investigations. The subsequent prosecution of the offender is not a concern of this particular statutory body. Instead, the concern is with finding out if the child is in danger and if so, with providing adequate protective measures.
"Consequently, it is clear that the `judicial proceedings' referred to by ORS 418.775(1) are those civil proceedings wherein a juvenile court is required to decide if the child is in danger. * * *"
Defendant's two contentions may be answered by an examination of the legislative history of ORS 418.775. This section was originally numbered 146.770. We begin our examination by analyzing ORS 146.710 et seq. from the date of enactment in 1963.
In 1963 the Oregon Legislature enacted ORS 146.710 to 146.740 dealing with "Investigations of Injuries" in that part of the Oregon Revised Statutes relating to "Procedure in Criminal Matters Generally." ORS 146.710 defined "injury" as follows:

*790 "As used in ORS 146.710 to 146.740 "injury" means:
"(1) A physical injury caused by a knife, gun, pistol or other deadly weapon; or
"(2) Any physical injury to a child of the age of 12 or under caused by blows, beatings, physical violence or abuse where there is some cause to believe that such physical injury was intentionally or wantonly inflicted."
ORS 146.720 required certain persons to report the discovery of such an injury to the coroner or medical investigator.[5] ORS 146.730 provided that an investigation of such an injury may be made whenever the injury occurred under suspicious or unknown circumstances.[6] ORS 146.740 provided:
"(1) Whenever the coroner or medical investigator concludes that a crime may have been committed by any person in causing the injury, he shall report his conclusion to the district attorney.
"(2) Whenever the coroner or medical investigator finds that the injury was to a child of the age of 12 or under and that it was caused in a manner which could place the child under the jurisdiction of the juvenile court, he shall report the circumstances of the injury to the juvenile court."
According to the testimony of one of the sponsors of this legislation, the bill was needed to aid law enforcement agencies "in apprehending law breakers."[7]
In 1965, the Oregon Legislature passed HB 1504, which amended ORS 146.710 et seq. and added new provisions. New section 146.750 revised the reporting requirements, and required physicians who became aware of an injury as defined in ORS 146.710 to make a report to the medical investigator.[8] ORS 146.730 and 146.740 still provided for investigations based on these reports, with notification in appropriate cases to the district attorney and juvenile court.[9] *791 HB 1504 also added new section 146.770, which provided:
"In the case of injury to a child neither the physician-patient privilege nor the husband-wife privilege shall be a ground for excluding evidence regarding a child's injuries or the cause thereof, in any judicial proceeding resulting from a report made pursuant to subsection (2) of ORS 146.750."
In 1967, ORS 146.740 was amended as follows, the underlined portions indicating the addition:
"(1) Whenever the medical investigator concludes that a crime may have been committed by any person in causing the injury, he shall report his conclusion to the district attorney.
"(2) Whenever the medical investigator finds that the injury was to a child of the age of 12 or under and that it was caused in a manner which could place the child under the jurisdiction of the juvenile court, he shall report the circumstances of the injury to an appropriate law enforcement agency and to the juvenile court."
No change was made in ORS 146.770.
In 1971, the legislature passed HB 1754, which removed the child abuse sections from 146.710 et seq. and transferred them with some modifications to new ORS sections 418.740 et seq. ORS 418.740(1) defined "abuse", thereby replacing 146.710(2).[10] ORS 418.750 and 418.755 contained the reporting requirement and the procedure for making reports previously found in 146.750.[11] The reports were now to go to a law enforcement agency rather than to the medical investigator. Upon receipt of a report, the law enforcement agency was required by ORS 418.760(1) (which replaced ORS 146.730) to notify the medical investigator, and together they were to conduct an investigation.[12] ORS 418.760(2) replaced ORS 146.740, and stated as follows:

*792 "If the law enforcement agency conducting the investigation or the medical investigator finds reasonable cause to believe that abuse has occurred, the law enforcement agency shall notify the district attorney, the Public Welfare Division and the juvenile department of the county in which it is located within 24 hours of the receipt of the oral report. The Children's Services Division shall offer protective social services of its own or of other available social agencies if necessary to prevent further abuses to the child or to safeguard his welfare." (Emphasis added)
Finally, ORS 418.775 replaced ORS 146.770, with the notation "Formerly 146.770." ORS 418.775 provided:
"(1) In the case of abuse of a child, as defined in ORS 418.740, neither the physician-patient privilege nor the husband-wife privilege shall be a ground for excluding evidence regarding a child's abuse, as defined in ORS 418.740, or the cause thereof, in any judicial proceeding resulting from a report made pursuant to ORS 418.750.
"(2) In any judicial proceedings resulting from a report made pursuant to ORS 418.750, either spouse shall be a competent and compellable witness against the other."
The situation as it existed in 1971 in regard to defendant's two contentions may therefore be summarized as follows: First, ORS 418.775, which unquestionably abrogates the husband-wife privilege in at least some contexts, was in fact once found in "the statutes relating to crimes and criminal procedure" as required by ORS 136.430. There is no indication in the legislative history that by renumbering former ORS 146.770, the legislature intended to restrict in any way the scope of its previous abrogation of the marital privilege.
In regard to what the scope of that abrogation is (defendant's second contention), we conclude that by abrogating the privilege "in any judicial proceeding resulting from a report made pursuant to ORS 418.750," the legislature meant to include criminal proceedings. That a criminal proceeding is a type of "judicial proceeding" contemplated to result from a report follows from the fact that a report of child abuse under ORS 418.750 led to an investigation by the medical investigator and the police (ORS 418.760(1)). If abuse were found, ORS 418.760(2) specifically provided that the district attorney was to be notified within 24 hours of the receipt of the report. If after such notification the district attorney then decided to prosecute, it cannot be doubted that the criminal trial would be a "judicial proceeding resulting from a report."
We find nothing in either the statute or in the legislative history which refutes this obvious construction by requiring a narrow reading of the phrase "any judicial proceeding" so as to exclude criminal trials. Indeed, such a narrow construction would be inconsistent with the many references in the testimony on HB 1754 to the dual purpose to be served by the reporting requirements: aiding in apprehending and prosecuting lawbreakers, and involving social agencies in problem situations so as to protect the child and counsel the parents.[13]
This was the state of the law when the legislature passed SB 65 in 1975. SB 65 made no changes in ORS 418.775(1) that affect the resolution of this case. The words "[i]n the case of abuse of a child, * * * the husband-wife privilege * * shall not be a ground for excluding evidence regarding a child's abuse, or the cause thereof, in any judicial proceeding resulting from a report made pursuant to ORS 418.750" remain intact.
*793 There were certain amendments to other provisions in ORS 418.740 et seq., however, that deserve mention. First, SB 65 broadened the definition of abuse in ORS 418.740(1) to include "[s]exual molestation" (ORS 418.740(1)(c)). Second, ORS 418.755 was amended to provide an option to report either to a law enforcement agency or to the local office of the Children's Services Division (CSD).[14] Similarly, ORS 418.760 was amended to provide that either CSD or the law enforcement agency was to investigate. If the law enforcement agency investigated and found reasonable cause to believe that abuse had occurred, it no longer notified the district attorney, the public welfare division and the county juvenile department, but now only notified CSD.[15]
In undertaking to discover the intended meaning of these changes, it is helpful to examine the exhibits and testimony offered by CSD representatives before the legislature. SB 65 was drafted at the request of CSD, and in a written statement explaining the changes proposed by the bill CSD commented as follows:
"The sole purpose of a child abuse reporting law is the early detection of child abuse, so that protection may be provided to the child. Sometimes, the parents are prosecuted and/or the child is removed from the home. Whenever possible, the child is allowed to remain in the home and the abusive situation resolved through the provision of social services." (Emphasis added)
Senate Human Resources Comm., Exhibits to SB 65, p. 25, CSD commentary on recommended change to ORS 418.745, March 11, 1975.
In commenting on the specific change in notification from the district attorney to CSD found in ORS 418.760, the CSD written statement said:
"Since CSD is mandated by ORS 184.805 to provide protective services, the police officer should notify the CSD in all cases if abuse has occurred, however, it is not always necessary to notify the district attorney and the juvenile department. This is a routine part of his duties and need not be spelled out in a reporting law. (Emphasis added)
Ibid, p. 27.
In prepared testimony on SB 65 before the Senate Human Resources Committee, Karen Pierson of CSD commented on this amendment to ORS 418.760 as follows:
"Section 8 of the bill amending ORS 418.760. This section deletes the responsibility of the police to notify other agencies prior to investigation of the report. Further, it only requires them to report to CSD when abuse has been confirmed. If the abuse is serious or the police officer believes that a crime has been committed, it is part of his official duty to report to the district attorney. It need not be stipulated in a child abuse reporting law. Further, if the police officer needs the assistance of the medical investigator, he will call him. In minor cases where the abuse is a result of overdiscipline, it may only be necessary for the police to report to CSD who will provide protective services. In summary, the police should be *794 given discretion as to the action they take according to the merits of the case as they have in any other investigation." (Emphasis added)
Senate Human Resources Comm., testimony on SB 65, Exhibits p. 45, March 11, 1975.
During testimony before the same committee on the proposed change in notification under ORS 418.760, Senator Brown expressed concern about the deletion of the requirement of a report to the district attorney following a report of child abuse. Bud Powell of CSD reassured him that "it was the responsibility of the police to report to the District Attorney when they think a crime has been committed, just as is the case with any crime." Testimony on SB 65, Minutes of Senate Human Resources Comm., March 11, 1975, p. 4.
As noted in Baccelleri v. Hyster Co., 287 Or. 3, 597 P.2d 351 (decided July 3, 1979), we realize that this kind of legislative history has its limitations as an aid in discerning the intent of the legislature. Nonetheless, as in Baccelleri, we are of the opinion that this legislative history is persuasive in that the comments quoted above were made by representatives of CSD, at whose request such legislation was enacted.
In short, the amendments found in SB 65 do not indicate a legislative intention that reports made pursuant to 418.740 et seq. would no longer result in criminal prosecutions. ORS 418.760 was amended so that the police officer was not required to report every case of abuse to the district attorney, leaving it to the police officer's discretion to determine when an incident warranted the consideration of the district attorney.
This analysis, when combined with the total absence of any indication in the legislative history to the contrary, leads us to the conclusion that when the legislature amended ORS 418.740 et seq. in 1975, it did not intend to change the meaning of the words "any judicial proceeding resulting from a report" in ORS 418.775(1) which we have held to have been intended to include criminal proceedings.
We therefore conclude that ORS 418.775(1) abrogates the privilege for marital communications found in ORS 44.040(1)(a) in criminal prosecutions such as this one involving "abuse" of a child, as that term is defined in ORS 418.740(1) to include sexual molestation.[16]
Defendant also contends that even if this court holds that ORS 418.775(1) does abrogate the husband-wife "communications" privilege in a criminal proceeding involving child abuse, we should nevertheless follow the Court of Appeals in holding that this statutory provision is inapplicable to the facts of this case. The Court of Appeals held (at 37 Or. App. at 704-705, 588 P.2d at 640) in reference to ORS 418.740 et seq., that those statutes:
"* * * indicate that in subsequent legal proceedings arising out of those reports, the report itself shall be admissible and shall not be deemed in violation of the physician-patient privilege, the husband-wife privilege, or the privilege extended to staff members of schools and to nurses under ORS 44.040. We do not believe, however, that a communication between spouses substantially after the incident, and not part of the initial report, is included within the exception." (Emphasis added)
As previously noted, however, ORS 418.775(1) states that in a child abuse case the husband-wife privilege "shall not be a ground for excluding evidence regarding a child's abuse, or the cause thereof, in any judicial proceeding resulting from a report * * *." Contrary to the interpretation of ORS 418.775(1) by the Court of Appeals, we find nothing in the statute to indicate that this abrogation of the rule of privilege is limited to "the report itself." The statute states that the privilege "shall not be a ground for excluding evidence," it does not say "shall not be a ground for excluding the *795 report itself." We therefore reject defendant's contention, and conclude that the letter was admissible into evidence by reason of ORS 418.775(1) over a claim of privilege.
Defendant further contends, however, that the letter should not have been admitted because its prejudicial effect outweighs any probative value it may have. We have examined the record, and conclude that the statements in the letter were relevant in that they arguably were an admission by the defendant of the criminal conduct alleged and of the accuracy of Danny's testimony at the preliminary hearing. As to the question of whether the letter's relevancy or probative value was outweighed by its tendency to be prejudicial, we have stated in State v. Flett, 234 Or. 124, 127, 380 P.2d 634 (1963) that:
"We believe the controlling rule is found in our own recent case of State v. Kristich, 226 Or. 240, 359 P.2d 1106 (1961). When highly prejudicial evidence is offered, its relevancy, i.e., its tendency to prove an issue in dispute, must be weighed against the tendency of the offered evidence to produce passion and prejudice out of proportion to its probative value. The rule has been followed in later cases which have made it clear that the matter is largely within the sound discretion of the trial court. See, e.g., State v. Freeman, 232 Or. 267, 374 P.2d 453 (1962) (gruesome evidence held admissible)." (Emphasis added)
We cannot say in this case that the admission into evidence of this letter was an abuse of discretion.
For these reasons, we hold that the letter in question was properly admitted. The decision of the Court of Appeals is therefore reversed and defendant's conviction is affirmed.
NOTES
[*] Holman, J., did not participate in this decision.
[1] The "exceptions" urged by the state and rejected by the Court of Appeals were that the letter was not confidential in that it might have been read by jail personnel; that the fact that defendant's wife voluntarily delivered the letter to the district attorney vitiated its confidentiality; that a prosecution for sodomy upon the stepson falls within the exception found in ORS 44.040(1)(a) for a "criminal action or proceeding for a crime committed by one [spouse] against the other," and that the letter was made admissible by reason of ORS 418.775, which provides that in cases of child abuse the husband-wife privilege shall not be a ground for excluding evidence "in any judicial proceeding resulting from a report made pursuant to ORS 418.750." In regard to this last contention, the Court of Appeals held that because the letter in question was written substantially after the incident and was not part of the initial "report," it was not within the exception found in ORS 418.775. 37 Or. App. at 704-705, 588 P.2d 635.
[2] The state does not contend that even if ORS 44.040(1)(a) applies to criminal trials, it literally prohibits only examination into marital communications, and thus does not prohibit the admission of this letter.
[3] In connection with this argument, defendant also contends that the fact that ORS 136.655 (which does fall within the "statutes relating to crimes and criminal procedure") abrogates only the "testimonial" privilege indicates a legislative intent not to abrogate the "communications" privilege, and that ORS 418.775 should be interpreted accordingly. In our view, the mere fact that the legislature dealt with only the testimonial privilege in 1880 does not preclude it from dealing with the communications privilege in 1965.
[4] ORS 418.745 provides:

"The Legislative Assembly finds that for the purpose of facilitating the use of protective social services to prevent further abuse, safeguard and enhance the welfare of abused children, and preserve family life when consistent with the protection of the child by stabilizing the family and improving parental capacity, it is necessary and in the public interest to require mandatory reports and investigations of abuse of children."
[5] ORS 146.720 provided, in relevant part:

"(1) Every superintendent, manager, physician, nurse or other person having the supervision of any * * * institution, the object of which is to treat the injured or care for the sick, and any practitioner of any healing art licensed in this state shall promptly report any injury treated at such institution or by such practitioner to the appropriate coroner or medical investigator."
"(2) All peace officers shall promptly notify the coroner, medical investigator or one of their respective deputies of any injury requiring investigation under ORS 146.730, which comes to their attention."
[6] ORS 146.730 provided, in relevant part:

"An investigation of an injury may be made by a coroner or medical investigator whenever the injury occurred under suspicious or unknown circumstances. * * *"
[7] Testimony of Representative Orr on HB 1074, Minutes of House Judiciary Committee, Feb. 4, 1963, p. 1.
[8] ORS 146.750 provided, in relevant part:

"(1) Any physician * * * having reasonable cause to suspect that a person brought to him or coming before him for examination, care or treatment has had physical injury or injuries, as defined in ORS 146.710, inflicted upon him other than by accidental means, shall report or cause reports to be made in accordance with the provisions of subsection (2) of this section. * * *
"(2) An oral report shall be made immediately by telephone or otherwise, and followed as soon thereafter as possible by a report in writing, to the appropriate medical investigator. With respect to injuries referred to in subsection (2) of ORS 146.710, such reports shall contain the names and addresses of the child and his parents or other persons responsible for his care, if known, the child's age, the nature and extent of the child's injuries (including any evidence of previous injuries), and any other information that the physician believes might be helpful in establishing the cause of the injuries and the identity of the perpetrator."
[9] In addition, HB 1504 added new section 146.780, which provided in relevant part:

"(1) Every medical investigator who receives a report under subsection (2) of ORS 146.750 shall record the details of the report on a form provided by the office of the Chief Medical Investigator and shall send a copy of the completed form to the Chief Medical Investigator."
"* * *"
"(3) The Chief Medical Investigator shall make available to any law enforcement agency in this and other states and of the Federal Government such information as he may have in his possession relating to injuries to a child under 12 years of age."
[10] ORS 418.740 provided, in relevant part:

"As used in ORS 146.710 to 146.780, 146.990, 418.740 to 418.775, and 419.476, unless the context requires otherwise:
"(1) `Abuse' means:
"(a) Any physical injury to a child caused by blows, beating, physical violence or by use of a knife, gun, pistol or other deadly weapon where there is some cause to suspect that the injury was intentionally or wantonly inflicted.
"(b) Neglect, including malnutrition, which leads to physical harm. * * *
"(c) Any physical injury or disease caused by an apparent violation of ORS 163.220 [rape of sister, daughter or stepdaughter] as revealed by a physical examination.
"(2) `Child' means an unmarried person who is under 15 years of age.
"(3) `Public or private official' means:
"(a) Physician, including an intern.
"(b) Dentist.
"(c) School teacher, school nurse or school principal.
"(d) Public health nurse employed by a local health department.
"(e) Social worker employed by the Children's Services Division, the Public Welfare Division, a county juvenile department, or a licensed child-caring agency.
"(f) Peace officer.
"(4) `Law enforcement agency' means:
"(a) Any city or municipal police department.
"(b) Any county sheriff's office.
"(c) The Oregon State Police.
"(d) A county juvenile department."
[11] ORS 418.750 provided, in relevant part:

"Any public or private official having reasonable cause to believe that any child with whom he comes in contact in his official capacity has suffered abuse shall report or cause a report to be made in the manner required in ORS 418.755. * * *"
ORS 418.755 provided:
"An oral report shall be made immediately by telephone or otherwise, and followed as soon thereafter as possible by a report in writing to a law enforcement agency within the county where the public or private official is at the time of his contact. Such reports shall contain the names and addresses of the child and of his parents or other persons responsible for his care, if known, the child's age, the nature and extent of the child's injuries (including any evidence of previous injuries), the explanation given for the injuries and any other information which the reporter believes might be helpful in establishing the cause of the injuries and the identity of the perpetrator."
[12] ORS 418.760(1) provided:

"(1) Upon receipt of oral report required under ORS 418.750, the law enforcement agency shall immediately notify the appropriate medical investigator and the Public Welfare Division. The law enforcement agency and the medical investigator shall cause an investigation to be made to determine the nature and cause of the injuries to the child."
[13] See, e.g., testimony of Byron Siminich, Lane County Social Welfare Association, and John Leahy, Oregon District Attorneys Assoc., on HB 1754, Minutes of House Comm. on Welfare, March 30, 1971, p. 2; letter from Douglas McCool, representing Lane County Juvenile Court Advisory Council, dated March 30, 1971, on HB 1754, Exhibits of House Comm. on Welfare; comments by Representatives Thornton and Peck on HB 1754, Minutes of House Comm. on Health, Education and Welfare, April 9, 1971, p. 1.
[14] ORS 418.755 provided, in relevant part:

"An oral report shall be made immediately by telephone or otherwise to the local office of the Children's Services Division or to a law enforcement agency within the county where the person making the report is at the time of his contact. * * *"
[15] ORS 418.760 provided, in relevant part:

"(1) Upon receipt of oral report required under ORS 418.750, the Children's Services Division or the law enforcement agency shall immediately cause an investigation to be made to determine the nature and cause of the abuse of the child.
"(2) If the law enforcement agency conducting the investigation finds reasonable cause to believe that abuse has occurred, the law enforcement agency shall notify the local office of the Children's Services Division within 24 hours of the receipt of the oral report. The notification shall be followed by a written report. The Children's Services Division shall provide protective social services of its own or of other available social agencies if necessary to prevent further abuses to the child or to safeguard his welfare.
"* * *"
[16] It should be noted that ORS 418.740 et seq. were further amended in 1977. O.L. 1977 chs. 741 and 97. The amendments are not relevant to the issues in this case, and did not become effective until October 4, 1977, approximately two months after the incident in question.