Argued and submitted January 18, affirmed March 10,
reconsideration denied April 17,
petition for review denied May 28, 1980 (289 Or 209)

HOLDSCLAW,
*Respondent,*
*v.*
WARREN AND BREWSTER,
*Appellant.*

(No. A 7708-12217, CA 13264)

607 P2d 1208

Duane Vergeer, Portland, argued the cause for appellant. With him on the briefs were Thomas Sauberli and Vergeer, Roehr & Sweek, Portland.

William L. Hallmark, Portland, argued the cause and filed the brief for respondent.

Before Buttler, Presiding Judge, and Gillette and Roberts, Judges.

GILLETTE, J.

**GILLETTE, J.**

This is an action for wrongful death brought against the designer of a computerized saw mill. Plaintiff alleged both negligence in the design of the saw mill and strict liability for selling an unreasonably dangerous product. In its answer, defendant alleged contributory negligence and negligent misuse of the product as affirmative defenses. During the course of the trial, the plaintiff abandoned the negligence theory and proceeded only under strict liability. Thereafter, the trial court struck the affirmative defenses from the answer and refused to submit the issue of contributory negligence to the jury. A verdict was returned in plaintiff's favor. Defendant appeals. We affirm.

Plaintiff's decedent was a mill superintendent employed by Rogge Lumber Sales at their Wallowa mill. The defendant is the manufacturer of the "Maxi Mill," a series of interrelated machines used to cut logs at the Wallowa facility where the deceased was employed. Logs are passed through the "mill's" two saw blades which adjust to the log size automatically. During the operation, the log is "read" by a scanner that is connected to a computer. The computer feeds information to solenoid valves which use air pressure to move the saw blades from an open position of just over two feet apart to any lesser distance down to slightly under four inches. The blades are very large and heavy; the air pressure required to move them is considerable. If the movable carriage is empty when it passes by the scanner, the computer automatically sets the saw blades to a closed position.

During normal operation, the mill is run by a man working at a remote console. An emergency switch on the console shuts off electricity to the machine but does not shut off the air pressure or computer. In order to shut down the mill, not only must the electric circuit breakers be turned off but the air pressure must also be switched off and the air cylinders that move the blades must be bled.

On the day of the accident, the decedent ordered the mill shut down during the lunch hour so that the saw blades on the machine could be adjusted. He left the machine for a short time and, during his absence, two workers shut off the electricity but apparently did not shut off the air pressure or bleed the air cylinders. Upon his return, decedent began working on the machine. He crawled between the saw blades, then had an apprentice manually push the log carriage forward. The log scan and computer activated the air cylinders, the saw blades closed, and he died immediately.

Evidence was presented on the hazards of the machine and safety devices which could have prevented the accident, as well as the decedent's alleged negligent behavior in failing to follow certain safety regulations. This testimony does not concern us in detail. The sole issue to be decided is whether contributory negligence is a defense in a strict liability action so that the issue of comparative fault should have been submitted to the jury.

Both parties rely on the Oregon Supreme Court's recent opinion in *Baccelleri v. Hyster Co.,* 287 Or 3, 597 P2d 351 (1979). Defendant maintains that *Baccelleri* holds that contributory negligence is a defense in strict liability actions. Plaintiff argues that the court in *Baccelleri* was referring to only a certain type of contributory negligence, *i.e.,* that which is sometimes called "assumption of risk." We agree with plaintiff.

In 1975, the Oregon legislature abolished the doctrine of assumption of risk, ORS 18.475(2).[1] At the same time the contributory negligence statute, ORS 18.470, was amended to read as follows:

"Contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages for death or injury to person or

---

[1] ORS 18.475(2) provides:

"The doctrine of implied assumption of the risk is abolished."

property if the fault attributable to the person seeking recovery was not greater than the combined fault of the person or persons against whom recovery is sought, but any damages allowed shall be diminished in the proportion to the percentage of fault attributable to the person recovering. This section is not intended to create or abolish any defense."

The issue before the court in *Baccelleri* was whether that conduct which is sometimes *labeled* "assumption of the risk" but which is, in reality, a species of contributory negligence rather than assumption of risk can be compared in the apportionment of damages. The court held that it could. *Id.,* at 10.

The court then went on to decide that this form of contributory negligence could also be used for comparison in apportioning damages when the plaintiff is proceeding on the theory of strict liability in tort. *Id.,* at 12. The court stated:

"We hold that Oregon statutes provide that comparative fault is applicable in strict liability in tort. Whether defendant has adequately pleaded or proved that *kind* of contributory negligence which can qualify as comparative fault in a strict liability case was not in issue on this appeal." *Ibid.* (Emphasis added.)

We read the court's opinion as referring only to the species of contributory negligence it had considered earlier, *viz.,* assumption of the risk. An examination of prior opinions in this area strengthens our conclusion.

In *Findlay v. Copeland Lumber Co.,* 265 Or 300, 304, 509 P2d 28 (1973), the court held that conduct on the plaintiff's part which is commonly known as assumption of the risk will bar recovery in a strict liability action.[2] The court relied on Restatement (Second) Torts, § 402A, comment n. It provides, in part, that:

---

[2] *Findlay* is not directly in point because, at the time it was decided, the comparative fault statute specifically applied only to negligence actions.

"Contributory negligence, including assumption of the risk, shall not bar recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or injury to person

[157]

"Contributory negligence of the plaintiff is not a defense when such negligence consists merely in a failure to discover the defect in the product, or to guard against the possibility of its existence. On the other hand the form of contributory negligence which consists in voluntarily and unreasonably proceeding to encounter a known danger, and commonly passes under the name of assumption of risk, is a defense under this Section as in other cases of strict liability. If the user or consumer discovers the defect and is aware of the danger, and nevertheless proceeds unreasonably to make use of the product and is injured by it, he is barred from recovery." Restatement (Second) Torts, § 402A, Comment n.

The court's opinion was refined in *Johnson v. Clark Equip. Co.,* 274 Or 403, 547 P2d 132 (1976). There the court set out the elements of that type of assumption of the risk applicable to products libility cases.

"The defendant must show, first, that the plaintiff *himself* actually knew and appreciated the particular risk or danger created by the defect; second, that plaintiff voluntarily encountered the risk while realizing the danger; and, third, that plaintiff's decision to voluntarily encounter the known risk was unreasonable." *Id.,* at 409. (Emphasis in original).

Having determined that the form of negligence known as "assumption of the risk" may be applied in strict liability actions, we now must determine whether the defenses raised by the defendant in this case and set out here in the margin[3] properly state

or property if such negligence contributing to the injury was not as great as the negligence of the person against who recovery is sought, but any damages allowed shall be diminished in the proportion to the amount of such negligence attributable to the person recovering." Former ORS 18.470.

3

"FOR A FURTHER SEPARATE ANSWER AND DEFENSE, defendant alleges as follows:

I

"That all times material hereto Gilbert Wayne Holdsclaw was the person in charge of the mill referred to in plaintiff's complaint and in

the course of said employment was charged with the duty of seeing that suitable safety regulations were promulgated and followed in said mill.

II

"That at the time of and immediately prior to his death plaintiff's decedent was negligent in certain particulars, each of which was a cause of his death and plaintiff's loss and damage resulting therefrom.

III

"Plaintiff's decedent was negligent in the following particulars:

"1. In failing to make certain that no employee of the mill would enter a position of danger between the saws without having personally disengaged all power supplies to the equipment and without placing tags on or locking out the power switches and valves so that they could not be disturbed while a workman was within the area of danger from the machinery;

"2. In failing to deactivate the pneumatic power supply which propelled the machinery before entering the zone of hazard;

"3. In failing to bleed the air supply from the machinery before placing himself between the saws;

"4. In failing to keep a lookout for his own safety;

"5. In directing another employee to manually override the automatic braking system on the log carriage while he was within the zone of danger;

"6. In propelling the log carriage manually past the position of the limit switch which would activate machinery without first disconnecting all sources of power from the machinery and while he was between the saw blades;

"7. In failing to tag out power source controls or require others to do so before entering the area of danger.

"AND FOR A FURTHER SEPARATE ANSWER AND AFFIRMATIVE DEFENSE to plaintiff's second cause of action, defendant alleges as follows:

I

"That plaintiff's decedent's death was caused by his negligent misuse of the machinery in the following particulars:

"1. In failing to make certain that no employee of the mill would enter a position of danger between the saws without having personally disengaged all power supplies to the equipment and without placing tags on or locking out the power switches and valves so that they could not be disturbed while a workman was within the area of danger from the machinery;

"2. In failing to deactivate the pneumatic power supply which propelled the machinery before entering the zone of danger;

[159]

that theory. They do not. The first affirmative defense alleges ordinary negligence. The second alleges negligent misuse of the sawmill but it simply re-states the same facts set forth in the first defense. Nowhere are the three elements of assumption of risk as defined in the Restatement and *Johnson v. Clark Equip. Co., supra,* set out. Defendant's affirmative defenses did not bring it within the ambit of the *Baccelleri* decision. The trial court did not err in striking them.

Affirmed.[4]

---

"3. In failing to bleed the air supply from the machinery before placing himself between the saws;

"4. In failing to keep a lookout for his own safety;

"5. In directing another employee to manually override the automatic braking system on the log carriage while he was within the zone of danger;

"6. In propelling the log carriage manually past the position of the limit switch which would activate machinery without first disconnecting all sources of power from the machinery and while he was between the saw blades;

"7. In failing to tag out power source controls or require others to do so before entering the area of danger."

[4] Defendant's other assignment of error does not require discussion.