Argued and submitted January 13, reversed and remanded May 26, appellant - cross-respondent's reconsideration denied June 25, respondents - cross-appellants' reconsideration denied July 16, petitions for review allowed October 6, 1981 (291 Or 708)

SANDFORD,
*Appellant - Cross-Respondent,*
*v.*
CHEVROLET DIVISION OF
GENERAL MOTORS et al,
*Defendants.*
UNIROYAL, INC. et al,
*Respondents - Cross-Appellants.*

(No. A7707-10270, CA 15458)

629 P2d 407

Raymond J. Conboy, Portland, argued the cause for appellant - cross-respondent. With him on the briefs were Pozzi, Wilson, Atchison, Kahn & O'Leary, Dan O'Leary, and John S. Stone, Portland.

I. Franklin Hunsaker, Portland, argued the cause for respondents - cross-appellants. With him on the briefs were Howard F. Harrison, California, Joss & Bosch, Darrel L. Johnson and Bullivant, Wright, Leedy, Johnson, Pendergrass & Hoffman, Portland.

Before Gillette, Presiding Judge, and Roberts and Young, Judges.

YOUNG, J.

## YOUNG, J.

On October 1, 1975, plaintiff was driving a 1971 Chevrolet pickup truck with a cab-over camper when the truck went out of control, overturned and caught fire. Plaintiff suffered serious burns over 55 percent of her body and brought this products liability action to recover damages for her injuries. Her complaint was filed on July 21, 1977, naming General Motors Corporation, Friendly Chevrolet Company, Uniroyal, Inc. and The Tire Factory as defendants. Plaintiff, in her third amended complaint, alleged the pickup truck went out of control due to the failure of a defective tire manufactured by Uniroyal, which had been mounted on the front end of the pickup by The Tire Factory. She also alleged the fire was caused by the defective condition and design of the gas tank for which Chevrolet, as manufacturer, and Friendly Chevrolet Company, as retailer, were responsible. The action against all defendants was based solely on a strict products liability theory. There were no allegations of negligence.

During trial, General Motors and Friendly Chevrolet were granted summary judgments and left the case. They are not involved in this appeal.

The remaining defendants, Uniroyal, Inc. and The Tire Factory, filed answers charging the plaintiff with contributory fault. At the conclusion of the evidence, plaintiff moved to strike defendants' allegations of contributory fault on the ground that they were allegations of ordinary contributory negligence which could not be asserted as a defense to a claim based on strict liability. The trial judge ruled that ordinary contributory negligence is a defense to strict liability actions, although he withdrew certain of the defendants' allegations of contributory negligence because insufficient evidence had been introduced.

The court then instructed the jury, in accordance with the remaining allegations of the defendant Uniroyal, that the plaintiff might be found at fault "in operating the pickup and camper in a loaded condition when plaintiff was not familiar with the handling of the vehicle under such conditions" and in "failing to maintain proper control of the vehicle." The court similarly instructed the jury with regard to The Tire Factory's allegations, adding that plaintiff

could be found at fault "in operating the vehicle at an excessive rate of speed." Plaintiff excepted to these instructions on the same grounds asserted in support of the motion to strike.

The jury, by special verdict, found that the tire which failed had been manufactured by Uniroyal and sold by The Tire Factory "in a dangerously defective condition which condition caused injury to plaintiff;" that plaintiff's own fault, as alleged by defendants, contributed 45 percent to cause the accident; and that her total money damages were $600,000.

After reducing plaintiff's damages by the percentage of her fault, judgment was entered in favor of plaintiff in the amount of $330,000 bearing interest at the rate of 6 percent per annum. Plaintiff thereafter filed a motion for judgment notwithstanding the verdict, requesting entry of a judgment in her favor for the sum of $600,000, without reduction for her contributory fault. The motion was denied.

Plaintiff appeals; defendants cross-appeal. We reverse for error in polling the jury, but first address plaintiff's contention that comparative fault should not have been submitted to the jury because it is central to our disposition of the case.

## Comparative Fault

The principal issue presented by plaintiff's appeal is whether ordinary contributory negligence is a defense in strict liability actions under Oregon's comparative fault statute, ORS 18.470.[1] We considered this precise question in *Holdsclaw v. Warren,* 45 Or App 153, 607 P2d 1208, *rev den* (1980), where we held that only one form of contributory negligence could be considered for comparative purposes in a strict liability action. That form of negligence has in the past been commonly conceived as a type of assumption of risk. In *Johnson v. Clark Equip. Co.,* 274 Or 403, 547 P2d 132 (1976), the court set out the elements of that type of assumption of risk when applicable to strict products liability cases:

---

[1] ORS 18.470 provides:

"The defendant must show, first, that the plaintiff *himself* actually knew and appreciated the particular risk or danger created by the defect; second, that plaintiff voluntarily encountered the risk while realizing the danger; and third, that plaintiff's decision to voluntarily encounter the known risk was unreasonable." *Id.,* at 409 (Emphasis in original.)

Defendants concede error by the trial court under *Holdsclaw.* They request, however, that we re-examine that decision and overrule it. We have re-examined it and conclude it was correctly decided.

Defendant's primary concern is with our reliance in *Holdsclaw* on *Findlay v. Copeland Lumber Co.,* 265 Or 300, 509 P2d 28 (1973), and Restatement of Torts 2d, § 402A, comment n. *Findlay* was the first Oregon decision to apply comment n. for the purpose of limiting contributory negligence as a defense to strict liability to instances of knowing and voluntary "assumption of risk." Defendants argue:

"Comment 'n.' of the Restatement was published in 1965 when the American Law Institute viewed *contributory negligence* as a *complete* defense and favored restricting the harsh application of this doctrine in the products liability area. * * * Under that view or rule, only a knowing and voluntary 'assumption of the risk' could be used as a defense to an action based on strict liability. That rule, however, quickly became outmoded with the advent of statutes allowing *comparative negligence or fault,* such as ORS 18.470 in its present form." (Emphasis supplied.)

In *Holdsclaw* we acknowledged that *Findlay v. Copeland Lumber Co., supra,* was "not directly in point because, at the time it was decided, the comparative fault statute specifically applied only to negligence actions." 45 Or App at 157 n. 2. Nonetheless, our reliance on *Findlay* and comment n. was not misplaced. Our main concern in *Holdsclaw* was to interpret *Baccelleri v. Hyster Co.,* 287 Or

---

"Contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages for death or injury to person or property if the fault attributable to the person seeking recovery was not greater than the combined fault of the person or persons against whom recovery is sought, but any damages allowed shall be diminished in the proportion to the percentage of fault attributable to the person recovering. This section is not intended to create or abolish any defense."

3, 597 P2d 351 (1979). In *Baccelleri,* the Supreme Court sought to determine whether and to what extent comparative fault is a defense to strict liability under ORS 18.470. The court relied on a memorandum in the legislative history, which stated:

"Finally Section 1 provides for apportionment to the extent that plaintiff's conduct may be characterized as contributory negligence and would otherwise completely bar recovery. Section 1 is not intended to create new defenses. * * * Specifically, this Act is not meant to require apportionment of those types of contributory negligence held not to constitute a defense to strict liability. [This statement is followed by footnote 5, which reads:] *Findlay v. Copeland Lumber,* 265 Or 300, 500 P2d 28 (1973), adopts Restatement (Second) Torts, Section 402A, Comment n, which reads in part, 'contributory negligence of a plaintiff is not a defense when such negligence consists merely in a failure to discover the defect in the product, or to guard against the possibility of its existence.' * * *." 287 Or at 11.

This memorandum indicates the legislature did not believe *Findlay* and comment n. would become outmoded by its amendment of ORS 18.470, and that is how the Supreme Court interpreted it.[2] The trial court erred in allowing the jury to compare plaintiff's ordinary negligence with defendants' strict liability.

### *Jury Poll*

In their cross-appeal, defendants assert that the trial court committed reversible error when it declined to poll the jury with respect to determining each juror's answer to the questions asked in the special verdict form.

The case was submitted to the jury following seven days of trial. Roughly seven and one-half hours into deliberations, the jury indicated a possiblity of being deadlocked. After inquiry and learning the vote stood at eight - four, the court determined that the jury was not "hopelessly

---

[2] The legislature recently enacted Section 402A of the Restatement (Second) of Torts as a statutory basis for strict products liability. Or Laws 1979, ch 866, § 2(1) and (2). The act specifically provides that it is the intent of the Legislative Assembly that the act be construed in accordance with Comments a through m to Section 402A. *Id.,* at § 2(3). Comment n is conspicuously absent. This action was commenced prior to the effective date of the act, however. Since the act does not apply to this case, *id.,* at § 8, we express no opinion on the effect of omitting Comment n as a constructive guide.

deadlocked" and reinstructed the jury, giving a modified form of the so called "Allen charge." Roughly three hours after the instruction was given, the jury reported it had a question. The jury was instructed to reduce its question to writing. Within a few minutes, and without submitting the question, the jury announced it had a verdict.

The verdict for the plaintiff, omitting title and caption, was read in its entirety.[3] The foreperson, when asked if the verdict was unanimous, replied, "It was nine to three." The court, *sua sponte,* polled the jury by asking them the customary question, "Is this your verdict?" All twelve jurors answered affirmatively. Defendants, sensing some confusion because of the announced vote of nine to three and a "polled" count of twelve to zero, timely requested that the jury be polled a second time to determine each juror's answer to each of the four questions in the verdict form. Plaintiff objected to a second poll, whereupon the court received the verdict and discharged the jury.

■      It has not yet been decided in Oregon whether a party has a right to have the jury polled on each question of a special verdict. *See Aronson v. Fagan,* 278 Or 135, 562 P2d 974 (1977). The general right to have the jury polled is provided by statute and is absolute on proper request by a party. *Eisele . v. Rood,* 275 Or 461, 551 P2d 441 (1976); *Rodgers Insurance Agency v. Andersen Machinery,* 211 Or 459, 467, 316 P2d 497 (1957); *Freeman v. Wentworth and Irwin, Inc.,* 139 Or 1, 7 P2d 796 (1932); *Brummett v. Parson,* 49 Or App 588, 619 P2d 1355, (1980). The relevant statute is former ORS 17.355(2), which states:

"When a verdict is given, and before it is filed, the jury may be polled on request of either party, for which purpose each shall be asked whether it is his verdict; if a less

---

[3] The verdict form requested the jury to answer the following four questions:

"1. Was the tire manufactured by Defendant UniRoyal, Inc. and sold by Defendant The Tire Factory, in a dangerously defective condition which condition caused injury to the plaintiff?

"2. Was Plaintiff at fault in any respect as alleged by the Defendants which contributed to her injuries?

"3. What percentage did the fault of each [party] contribute to cause the accident?

"4. What are Plaintiff's total money damages?"

number of jurors answer in the affirmative than the number required to render a verdict, the jury shall be sent out for *further deliberation.* * * *"[4]

As the statutory language indicates, one important purpose served by conducting a poll is to assure there is a sufficient number of jurors expressing their individual agreement with the verdict, as read in court, to render the verdict valid. *State v. Lewis,* 18 Or App 206, 524 P2d 1231 (1974).

Amended Art VII, § 5(7), Oregon Constitution and former ORS 17.355(1) both provide that "in civil cases three-fourths of the jury may render a verdict." Decisions construing these provisions hold that, in cases tried to a jury having 12 members, at least nine jurors must agree on a verdict and the *same* nine must agree on each separate issue demanding resolution in order to arrive at a valid verdict. In *Shultz v. Monterey,* 232 Or 421, 424, 375 P2d 829 (1962), and *Clark v. Strain,* 212 Or 357, 367, 319 P2d 940 (1958), general verdicts were held invalid because a common group of nine jurors had not agreed both on liability and the amount of total damages. Those holdings were extended in *Munger v. SIAC,* 243 Or 419, 414 P2d 328 (1966), where the court held that a special verdict is valid only where a common group of nine jurors agree on all of the questions presented.

■ We conclude that the statutory right to have the jury polled includes the right to have the poll conducted in a manner which demonstrates the verdict's validity. Otherwise, the right to a poll, though absolute, would be meaningless.

In the present case, the jury was polled, and the verdict appeared unanimous. Because of this appearance of unanimity, it might be argued that the verdict was valid on its face, and that, by leaving only one possibility of how the jurors had voted, it was unnecessary to inquire of them further. Under the circumstances of this case, we do not draw those conclusions. When the jury returned from its deliberations, the verdict form was read, the foreperson was asked if the verdict was unanimous (to which she

---

[4] Substantially the same language appears in ORCP 59 G.(3), which was not in effect when this case was tried.

replied, "It was nine to three."), and the jurors were then asked to respond "yes" or "no" to the question, "Is this your verdict?" Their unanimous affirmation supports at least two reasonable inferences: first, that three jurors abruptly changed their minds; or, second, that at least three jurors were in reality responding, "Yes, our verdict was nine to three." Because the jury had been deadlocked "eight - four" for a number of hours, we find it more likely that the second inference was in fact the case.[5] This probability of a split vote in turn would have made it more crucial to determine if at least nine jurors had voted similarly on all questions.[6] Defendants timely requested a poll for that purpose. The denial of that request was error, and, because we cannot rule it was harmless, it was reversible error.

■■    Because of the importance of receiving a valid jury verdict, we take this opportunity to express what we believe to be the parameters of the inquiry under former ORS 17.355 and present ORCP 59 G.(3). Specifically, the jury poll is not a device for delving into the deliberative process of the jury. Its purpose is to determine if three-fourths of the jurors "agree on all issues determined by the verdict," *Shultz v. Monterey, supra,* 232 Or at 424, whether it be general or special. A general verdict returned in favor of a plaintiff (or a defendant on a counter claim) determines two issues: liability and the amount of total damages. The number of issues determined by a special verdict will correspond to the number of interrogatories asked. Once the verdict is read, the poll, on request, can be conducted in two ways: (1) the jurors can be polled individually on each issue decided, or (2) the jurors can be asked to respond

[5] The confusion in this case was caused by the court's use of the customary question, "Is this your verdict?" Similar confusion could be avoided in the future by using a question which apprises the jurors that what is wanted is a response indicating their individual agreement or disagreement with the verdict read in court, not the foreperson's announcement of how they voted.

[6] We previously held that the affirmative defenses asserted by the defendants were not available as defenses to plaintiff's claim of strict liability. Consequently, there was no issue of comparative fault; answers to questions two and three in the special verdict form were unnecessary to the jury's resolution of the case. The only questions requiring answers were numbers one and four, relating to defendants' strict liability and the amount of plaintiff's damages. Though these questions required no more factfinding than is customarily required to return a general verdict, defendants were entitled to a poll showing that at least nine jurors agreed with the answers given to both questions.

affirmatively or negatively to the question, "Is the verdict just read your individual verdict?", with an instruction that those who say "yes" must agree with the entire verdict. *Aronson v. Fagan, supra.*

Reversed and remanded.[7]

---

[7] On cross-appeal, defendants also argue the trial court erred in removing some of their allegations of comparative fault from the jury's consideration. These allegations did not rise to the level of knowing and voluntary assumption of the risk. *See Johnson v. Clark Equip. Co., supra.* They were properly removed.